ANDREW P. DOYLE *vs.* FRANK R. KIRBY.

Bristol. October 27, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Slander. Elections. Bribery.*

In a declaration for alleged slander in charging the plaintiff, who was a candidate for mayor of a city, with having sold his vote at an election, an averment, that the plaintiff was greatly injured in his candidacy for the office of mayor, is not a proper averment of special damage.

To charge a person orally with having sold his vote at an election does not impute the commission of a crime and is not actionable without averment and proof of special damage.

The laws incorporated in R. L. c. 11, deal with the whole subject of illegal voting, including bribery at elections, and provide no punishment for a voter receiving a bribe, superseding the common law in this regard.

TORT for alleged oral slander. Writ dated November 15, 1902.

The declaration as amended alleged that the plaintiff being

of good reputation was nominated for the office of mayor of the city of New Bedford, and that the defendant did publicly and maliciously accuse the plaintiff of having sold his vote as a citizen at an election of the citizens of New Bedford, and thereby of having participated in the commission of the crime of bribery, by words spoken of and concerning the plaintiff substantially as follows: "That's a great man" (meaning the plaintiff) "to nominate" (meaning the plaintiff) "who sold his" (meaning the plaintiff's) "vote" (meaning thereby that the plaintiff, being a registered voter of the city of New Bedford, had sold his vote at an election of the citizens thereof). "That man Doyle sold his vote" (meaning thereby the plaintiff had violated his suffrage). "They've got his name over there on the books" (meaning thereby that the plaintiff had been guilty of selling his vote as an elector of New Bedford and that such sale was recorded).

The declaration further alleged, that by reason of the publication of such false, scandalous and malicious words the plaintiff had been greatly injured in his good name and had been exposed to a prosecution for bribery, and had suffered great pain and anxiety of mind and was greatly injured in his candidacy for the office of mayor of the city of New Bedford.

The defendant demurred to the declaration, alleging, among other grounds of demurrer, that the words alleged to have been spoken did not by their natural import, or as connected with any state of facts alleged as existing at the time, charge or impute any crime or misdemeanor whatever, and were not slanderous *per se,* and that the amended declaration did not contain any sufficient allegation of special damage; also, that the amended declaration did not state a legal cause of action substantially in accordance with the rules contained in R. L. c. 173.

The Superior Court sustained the demurrer, and gave judgment for the defendant. The plaintiff appealed.

*J. P. Doran & E. T. Bannon,* for the plaintiff.

*E. J. Hadley & B. B. Barney,* for the defendant.

KNOWLTON, C. J. The defendant demurred to the declaration on different grounds, some of which it is unnecessary to consider.

The declaration contains no proper averment of special damages to the plaintiff. It does not allege that the words were

spoken of him in any office or occupation.  It does not state how they caused him any special damage.  When special damage is stated as a cause of action in slander, it is necessary to set forth the particulars of the damage sufficiently to enable the defendant to know what is relied on, so that he may properly prepare his defence.  *Cook* v. *Cook*, 100 Mass. 194.  *Morasse* v. *Brochu*, 151 Mass. 567, 572.  *Swan* v. *Tappan*, 5 Cush. 104.

As this action is not for a libel, but for a slander by spoken words, there can be no recovery in the absence of a plea and of proof of special damages, unless the words impute the commission of a crime.  *Goodrich* v. *Hooper*, 97 Mass. 1.  *Sillars* v. *Collier*, 151 Mass. 50.  Odgers, Libel & Slander, (3d ed.) 59.

The plaintiff is charged with having " sold his vote."  If we assume in his favor, without deciding, that upon the facts alleged in the declaration the words might be found to mean that he sold his vote at an election of citizens of New Bedford, we come to the question whether such a sale is a criminal offence under our laws.  The plaintiff concedes that there is no statute which makes such a sale punishable in this Commonwealth.  But he contends that it is a crime at common law, and that this part of the common law is still in force here.

Bribery at elections of members of parliament was an offence at common law in England, and so, probably, was bribery at municipal elections.  1 Bl. Com. 179.  1 Russ. Crimes, (6th ed.) 455.  Whart. Crim. Law, § 1858.  1 Bish. Crim. Law, § 471.  *Rex* v. *Pitt*, Burr. 1335.  *The King* v. *Plympton*, Ld. Raym. 1377.  *State* v. *Jackson*, 73 Maine, 91.  See also *Commonwealth* v. *Silsbee*, 9 Mass. 417.  At common law, as well as under some of the English statutes, there seems to be no difference in liability between the giver and the taker of a bribe.  Sts. 2 Geo. II. c. 24, § 7; 17 & 18 Vict. c. 102.  In this Commonwealth, our statutes punishing the giving of money for voting at elections have not made the receiver punishable.  Pub. Sts. c. 7, §§ 60, 61. Gen. Sts. c. 7, § 31.  Assuming in favor of the plaintiff, that before the enactment of statutes on this subject, the receipt of money as an inducement to vote in a certain way at an election was punishable in this Commonwealth as a crime at common law, it becomes necessary to consider our legislation.

It is a recognized principle that the enactment of a statute

which seems to have been intended to cover the whole subject to which it relates, impliedly repeals all existing statutes touching the subject and supersedes the common law. *Commonwealth* v. *Cooley*, 10 Pick. 37. *Commonwealth* v. *Marshall*, 11 Pick. 350. *Jennings* v. *Commonwealth*, 17 Pick. 80. *Lakin* v. *Lakin*, 2 Allen, 45, 46. *Commonwealth* v. *Dennis*, 105 Mass. 162. From time to time statutes have been enacted dealing with the subject of bribery at elections. In the later of these statutes the Legislature has attempted to cover the whole subject of elections, and especially the subject of offences in connection with elections. Chapter 11 of the Revised Laws is entitled, " Of Elections." It contains four hundred and twenty-six sections covering one hundred and two pages. The general title " Of Elections," is divided into forty-four sub-titles, of which one is " Corrupt Practices," one is " Penalties upon Officers," one is " Penalties upon Voters," and another is " General Penalties." Besides these, seven sections are devoted to the title, " Inquests in Election Cases," which contain provisions for the discovery of violations of the law. The twenty-two sections relating to " Corrupt Practices " provide for the punishment of a great many different offences. The twenty-one sections dealing with " Penalties upon Officers " and " Penalties upon Voters " prescribe punishment by fine or imprisonment for twenty-one different offences. There are also thirty-four sections which prescribe " General Penalties," each one of which creates a separate offence punishable by fine or imprisonment. Of these, § 415 is for " Bribery at Elections," and § 414 is " For Attempting to Influence Voter by Threats," etc. These sections prescribe punishment for one who bribes or attempts to bribe, and for one who threatens a voter to influence his vote. The St. 1890, c. 423, from which most of the provisions of the R. L. c. 11, relating to penalties, are taken, is entitled, " An Act to revise the laws relating to elections." It seems pretty plain that the Legislature, in these statutes, intended to cover the whole subject of punishment for illegal voting and illegally influencing voting at elections, including as well improper conduct on the part of voters as improper conduct by bribery or otherwise on the part of those seeking to influence voting. After creating such a large number of punishable offences, going into such detail as to every kind of miscon-

duct, it is inconceivable that the Legislature intended to leave the common law in force as to any form of bribery at elections. It seems, rather, that in accordance with earlier statutes in this State, and statutes in other States, and the general practice in America, the Legislature thought it wise to deal with the purchase of votes through the prosecution and punishment of those who buy them, rather than through the punishment of the voter whose action is improperly influenced by the receipt of money.

We are of opinion that the statutes referred to supersede the common law in regard to bribery at elections, and that the language of the declaration does not charge the commission of a crime.

*Judgment affirmed.*