DANIEL J. SULLIVAN *vs.* CITY OF WORCESTER.

Worcester.   October 9, 1963. — December 12, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Municipal Corporations,* By-laws and ordinances, Employees.   *Civil Service.*

Where, in a series of ordinances adopted by a city council, two ordinances, never expressly repealed, provided that one of the deputy chiefs of police should also serve as an inspector and should be paid a certain amount in addition to the salary of a deputy chief, but a later comprehensive salary ordinance specifically deleted the position of inspector and raised the salary of a deputy chief above the total amount then received by the officer who was serving as deputy chief and inspector, the later ordinance abolished the additional amount payable for service as inspector as provided in the earlier ordinances and such officer was not entitled to the additional amount after the enactment of the later ordinance; G. L. c. 31, § 43 (a) was not applicable.

CONTRACT.   Writ in the Central District Court of Worcester dated April 28, 1960.

The action was heard by *Garvey,* J., who found for the plaintiff for part of the amount sought to be recovered.   A report claimed by the plaintiff was ordered dismissed by the Appellate Division, and the plaintiff appealed.   The defendant did not claim a report.

*Walter J. Griffin,* for the plaintiff, submitted a brief.

*Harry J. Meleski,* City Solicitor, for the defendant.

REARDON, J.   This is an action of contract to recover from the city of Worcester certain amounts for salary which the plaintiff alleges are due him from May 16, 1954, until his retirement from the service of the city on September 2, 1960.   The plaintiff is here on an appeal from an order of the Appellate Division dismissing the report of the District Court judge.

Daniel J. Sullivan was a member of the Worcester police department from 1918 until his retirement.   From May 23, 1949, until retirement he served as a deputy chief of police.

On December 29, 1949, the Worcester city council enacted a
new § 1 of Worcester Rev. Ord. (1943) c. 15, which in-
creased the number of deputy chiefs from two to four and
added thereto a new paragraph reading, "There shall be in
the Police Department an Inspector and a Supervisor each
of whom shall have qualified and served as a Deputy Chief.
Those Deputy Chiefs who have had the longest service
shall be given preference in such appointments.  Such ap-
pointees shall receive $900 per year in addition to the
amount paid Deputy Chiefs of Police."  (Later, on July
15, 1952, Worcester Rev. Ord. [1943] c. 15, § 1, became with-
out change Worcester Rev. Ord. [1951] c. 13, § 1.)  On
December 31, 1949, the plaintiff, as one of the senior deputy
chiefs, was appointed to the position of inspector with
duties and responsibilities different from and in addition to
those of himself and others as deputy chiefs of police, all
of which he discharged until his retirement.  He was then
paid his salary, $5,700, plus $900, or $6,600 a year, and re-
ceived subsequent increases, none of which is in dispute.
He was paid the additional $900 yearly, however, only until
May 16, 1954, on which date payment to him of the $900 a
year was discontinued without his consent, without com-
pliance with the provisions of G. L. c. 31, § 43 (if appli-
cable), and without any other authority than the enactment
of amendments to the city ordinances, the relevant ones of
which are as follows.

On August 28, 1951, the city council enacted a salary ordi-
nance which purported to set "[t]he rate of compensation
for all positions in the service of the city [with an excep-
tion not here relevant]."  In a schedule attached to and
made a part of the ordinance the plaintiff's position was
designated as "Chief of Police Deputy Inspector" and his
rate set at $6,785.48, $897 a year higher than that of an
ordinary deputy chief.[1]  In an effort to effect a change in a

[1] On September 28, 1952, a new comprehensive salary ordinance set the maxi-
mum rate of the "Chief of Police Deputy Inspector" at $5,760 the same rate
being contemporaneously established for a "Chief of Police Deputy."  Sec-
tion 26 of this ordinance provided that the rate of compensation of any officer
or employee on its effective date should not be reduced, with an exception not
material.

portion of the section not relevant to this case, the council, on September 1, 1953, specifically reënacted the whole of c. 13, § 1, including the second paragraph which provided that an inspector should receive $900 yearly more than a deputy chief. Again by a comprehensive salary ordinance of May 11, 1954, effective May 16, 1954, the council dealt with the position of the plaintiff by specifically deleting the office of "Chief of Police Deputy Inspector" and raising the maximum pay for the position of chief of police deputy to $6,900, the rate at which the plaintiff was paid until his retirement (with raises not material) notwithstanding repeated written notices by the plaintiff that he was accepting his pay under protest. A further ordinance possibly bearing upon the plaintiff's claim was effective July 1, 1956, which made a general upward revision of salaries and contained the following pertinent provisions: "Section 32. . . . [T]he compensation of any employee [in certain classification groups including the plaintiff] shall be deemed to be complete compensation without regard to any excess hours of duty because of holidays or overtime. . . . Section 33. . . . Any provision of any previous ordinance inconsistent herewith shall be controlled by the provisions of this ordinance." Another ordinance change on June 6, 1958, failed to strike the paragraph in the September 1, 1953, ordinance which had reference to the position of inspector and provided the $900 extra payment yearly which the plaintiff claims.

The District Court held the plaintiff entitled to the $900 yearly addition from May 16, 1954, to July 1, 1956, only. Whether the judge was correct in allowing recovery for the earlier period is not before us for the question was not reported to the Appellate Division. *Gaston Electric Co.* v. *American Construction Co., Inc.* 336 Mass. 454, 456, and cases cited. The plaintiff's requests sought rulings that he was entitled to recover for the entire period from May 16, 1954, to August 31, 1960, and that the discontinuance of his additional compensation was contrary to G. L. c. 31, § 43. These were denied in company with a request not material.

The validity of the plaintiff's claim is to be assessed in the light of the impact upon it of the chain of ordinances to which reference has been made. The second paragraph of c. 13, § 1, as originally enacted in 1949 remained undisturbed at all times material. It would at first appear that the ordinance of August 28, 1951, which was a comprehensive rescheduling of salaries for city employees and which set the plaintiff's pay at a rate some $900 yearly above that of a deputy chief, superseded and replaced the second paragraph of the 1949 enactment. As was said in *Homer* v. *Fall River,* 326 Mass. 673, 676, quoting from *Doyle* v. *Kirby,* 184 Mass. 409, 411–412, "it is a recognized principle 'that the enactment of a statute which seems to have been intended to cover the whole subject to which it relates, impliedly repeals all existing statutes touching the subject . . . .' " The rule is applicable to city ordinances. *Homer* v. *Fall River, supra,* at 677. But then came the ordinance of September 1, 1953, which reënacted the 1949 paragraph providing the $900 extra payment yearly to the inspector. However, the ordinance of May 11, 1954, specifically deleted the post of inspector. The evident intent of the council in 1954 was to abolish the preferential salary provision for the position of inspector as well as the office itself. Where there is a repugnancy between two statutory provisions, the earlier must give way, and to hold otherwise would be to render nugatory the later action. See *Homer* v. *Fall River,* 326 Mass. 673, 676; *Porter* v. *City Council of Malden, ante,* 368, 371–372. There followed the 1956 ordinance which may have endeavored to strike down any provision in earlier ordinances inconsistent with its salary provisions, and the 1958 ordinance alluded to above.

The issue is whether, as the plaintiff claims, G. L. c. 31, § 43 (a),[2] is applicable to the ordinances which deprived

[2] On May 16, 1954, the section read: "Every person holding office or employment under permanent appointment in the . . . service of . . . [any city] shall have unlimited tenure of office or employment . . . . He shall not be . . . transferred from such office or employment without his consent, lowered in rank or compensation, nor shall his office or position be abolished, except for just cause and for reasons specifically given him in writing, together with a

him of the $900 as a separate item of compensation. We hold that it is not.

These were ordinances of general application which applied broadly to those in the municipal service of Worcester. The governing principle is indicated in *Alger* v. *Justice of the Dist. Court of Brockton,* 283 Mass. 596, 601 (general salary reduction in two city departments), and *Simonian* v. *Boston Redevelopment Authy.* 342 Mass. 573 (a general change in which employment status was impaired but pay was increased). The plaintiff is in no position to urge a special qualification of the general rule.

The statute shows no intent that persons whose status or pay is changed by legislative acts of a city council having wide effect inside municipal services be given in each instance notice and hearing under G. L. c. 31, § 43 (a). Such a rule would place serious limitation upon the power of municipal government to engage in comprehensive ordinance revisions as from time to time are required in the public interest. *Cullen* v. *Mayor of Newton,* 308 Mass. 578, cited by the plaintiff in his brief, is distinguishable. In that instance a single position held by the plaintiff under civil service was abolished without notice and hearing, and the ordinance of abolition was held invalid. Here the plaintiff continued in his post of deputy chief, his duties and responsibilities unchanged and his total yearly compensation not reduced at all times material.

*Order dismissing report affirmed.*

---

copy of sections forty-three and forty-five. Before any action affecting employment or compensation referred to in the preceding sentence is taken, the officer or employee shall be given a full hearing before the appointing authority . . . [with written notice beforehand]. Within two days, exclusive of Sundays and holidays, after completion of said hearing, the appointing authority shall give to the employee affected a written notice of his decision, stating fully and specifically the reasons therefor.''