AMERICAN DOG OWNERS ASSOCIATION, INC., & others [1]
vs. CITY OF LYNN.

Essex.    October 4, 1988. — February 9, 1989.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Municipal Corporations*, By-laws and ordinances. *Statute*, Construction, Revival. *Due Process of Law*, Vagueness of ordinance. *Dog*. *Words*, "Pit Bull."

An appeal raising the issue whether three ordinances of the city of Lynn restricting ownership of certain dogs (so-called "Pit Bulls") within the city limits violated requirements of due process because they were unconstitutionally vague became moot where, because of legislative action or operation of law, or both, the ordinances were no longer in effect. [76-78]

Due process principles require that a municipal ordinance restricting ownership of a certain breed of dog provide law enforcement officials with ascertainable standards by which to enforce the ordinance. [78-80]

CIVIL ACTION commenced in the Superior Court Department on July 22, 1986.

The case was heard by *John P. Forte*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Patrea L. Pabst* of Georgia (*Ina Resnikoff* with her) for the plaintiffs.

*Charles M. Burnim* (*Michael J. Barry*, Assistant City Solicitor, with him) for the defendant.

LYNCH, J. This is an appeal by American Dog Owners Association (Dog Owners) from a judgment upholding two of three city of Lynn ordinances which restrict ownership of cer-

[1] American Pit Bull Terrier Club of New England and Responsible Dog Owners Defense Committee of Lynn, Inc; Bonny Simone and Grace Walters, individually.

tain dogs within the city limits. Dog Owners commenced this action in July, 1986,[2] seeking damages as well as injunctive and declaratory relief pursuant to Mass. R. Civ. P. 65, 365 Mass. 832 (1974), and G. L. c. 231A, §§ 1 and 2 (1986 ed.). Dog Owners challenged, under the Massachusetts Declaration of Rights and United States Constitution, the constitutionality of the ordinances which address ownership and control of certain dogs and impose fines on owners (and potential banishment of dogs) for violation of the ordinances.[3] After a jury-waived trial, the Superior Court judge issued findings of fact, rulings of law, and an order for judgment, which were challenged both by Dog Owners and by Lynn through various motions and requests for further findings and rulings or clarification. It is from the final judgment, modifying findings and rulings with respect to the first two ordinances and declaring the third ordinance void, that Dog Owners appealed; we transferred the case here on our own motion.

The first of the three ordinances was adopted July 9, 1985, and purported to amend an existing ordinance requiring dogs within the city to be restrained. This "amendment" applied to "American Staffordshire Terrier[s], a/k/a American Pit Bull Terrier[s] or Bull Terrier[s]," and required the owner or person having control of such dogs to have the dog muzzled when off the owner's premises. The ordinance imposed a maximum fine of $300 for each violation,[4] and expressly provided that any existing ordinances or parts of ordinances inconsistent with its terms were repealed.

---

[2] At the commencement of the action, only two of the ordinances at issue had been enacted. The complaint was later amended to include a challenge to the third ordinance.

[3] Dog Owners complained that the ordinances were invalid as being violative of, inter alia, due process, equal protection, and interstate commerce and travel rights, as well as being inconsistent with G. L. c. 140. The only issue raised on appeal is whether the ordinances violate due process because they are unconstitutionally vague.

[4] The judge held that the fines set forth in this and the second ordinance were invalid because in excess of the fifty dollar maximum fine established in G. L. c. 140, § 173A. Lynn has not appealed this ruling, and in fact lowered the fine in ordinance three.

The second ordinance applied to the "ownership of the breed of dogs known as American Staffordshire, Staffordshire Pit Bull Terrier or Bull Terrier," and was adopted June 10, 1986. This ordinance immediately banned the sale of the listed dogs, "hereinafter referred to as 'Pit Bulls,'" as well as any "new registrations" of "Pit Bulls."[5] In addition, the ordinance imposed a "total ban" of "Pit Bulls" from anywhere in Lynn except the dog owner's property, and required that the dogs be secured while on the owner's property so as to be unable to "gain access to public areas." The second ordinance imposed $500 fines for allowing a "Pit Bull" off the owner's property or failing to register a "Pit Bull," and further provided that such dogs would be "forever banned from the limits of the City of Lynn." Like the first ordinance, the second ordinance by its terms repealed any inconsistent existing ordinances or parts of ordinances.

The third ordinance was adopted on September 23, 1986, as an amendment to the second ordinance, apparently *replacing* the second in its entirety with the new provisions. It "defined" a "Pit Bull" as "American Staffordshire, Staffordshire Pit Bull Terrier, Bull Terrier or any mixture thereof," and imposed fifty dollar fines for sales of "Pit Bulls" within city limits. For ownership of an unregistered "Pit Bull" or a "Pit Bull" found off property "owned or controlled" by the owner of the dog, the ordinance imposed fifty dollar fines and banishment of the dog. The third ordinance allowed transportation of a "Pit Bull," muzzled and leashed, for medical or veterinary care, and defined "restraint" of the "Pit Bull" while on the owner's property as having the dog enclosed or secured by a chain or leash at least eight feet long. In addition to providing for notice and hearing procedures pursuant to G. L. c. 140, § 157, the third ordinance also provided that "[i]n all cases, a court of competent jurisdiction will make the determination" whether an unregistered or unrestrained dog believed to come within the ordinance, is in fact one of the named breeds or "any mixture

---

[5] The judge ruled that this provision, contained in the second and third ordinances, violated G. L. c. 140.

thereof." The third ordinance also expressly repealed previous inconsistent ordinances or parts of ordinances.

After trial, the judge found that there is no scientific means, by blood, enzyme, or otherwise, to determine whether a dog belongs to a particular breed, regardless of whether "breed" is used in a formal sense or not. He also found that the dog officers of the city of Lynn used "conflicting[,] subjective standards" to determine what dogs should be defined as "Pit Bulls" under the ordinances. These findings were supported by the testimony of two Lynn dog officers, neither of whom had any training in breed identification and both of whom acknowledged that they necessarily used subjective standards to decide whether a particular dog was one of the types covered by the ordinance.[6] Likewise, the other experts who testified could not provide specific objective criteria for identifying dog breeds.

While all three of the ordinances are challenged on appeal, we must make a threshold determination as to which of the three ordinances, if any, is properly before us. The first ordinance, which allows the subject dogs off the owner's premises as long as they are muzzled, is clearly inconsistent with the second ordinance, which bans the dogs from anywhere within the city limits *except* the owner's property. The first ordinance, therefore, was expressly repealed upon adoption of the second ordinance. The third ordinance by its terms *amended* the second ordinance by replacing it in its entirety with the new provisions. In addition, as the third ordinance was intended to treat the subject of "Pit Bulls" comprehensively, the existing ordinances on the subject were impliedly repealed. *Sullivan* v. *Worcester*, 346 Mass. 570, 573 (1963).[7]

---

[6] Indeed, one of the dog officers testified that, if there is a question about a dog he believes to fit one of the "categories" covered by the ordinance, and the owner claims the dog is not one of the targeted types, he would tell the owner to provide a letter from the dog's veterinarian stating that the dog is not one of the types covered. Yet the city of Lynn veterinarian testified that he relied on an owner's identification of his or her dog's breed and had no medical basis on which to dispute that identification.

[7] We note also that the city solicitor argued at trial that the first two ordinances had been repealed by passage of the third.

Not only was the third ordinance declared void for vagueness by the Superior Court judge, but its provisions were themselves impliedly repealed by passage of a fourth "Pit Bull" ordinance on June 30, 1987.[8] Once the third ordinance became inoperable, because it was void for unconstitutional vagueness, the earlier

---

[8] The fourth ordinance pertains to the "ownership, charge, custody, care or control of a dog or dogs known as a 'Pit Bull' in the City of Lynn." Like the third ordinance, it imposes a fifty dollar fine and banishment of the individual dog for the owner's violation of the ordinance, and provides in pertinent part:

"1. *Purpose and Intent*: This Ordinance is proclaimed and established because of the perceived and demonstrated danger to life, health and safety to humans and animals posed by so-called 'Pit Bulls,' or dogs known as Pit Bulls. No formal breed designation is intended by the use of the term 'Pit Bull,' or its plural 'Pit Bulls.' The term is employed to the full extent of its common understanding and usage. . . .

". . . .

"3. *Total Ban*: No person to whom this Ordinance is applicable shall allow or suffer any Pit Bull to be anywhere except within or upon the principal and usual residential premises of the person to whom such animal is registered as required by law, except as herein provided.

"3.1. *Within*: Where such animal is within said premises, appropriate care, precaution, and security must be maintained to preclude and prevent the animal from gaining access to the exterior of such premises or from reaching persons or animals from within such premises.

"3.2. *Upon*: Where such animal is upon such premises, as within a yard or within a deck, or upon the grounds of such premises, such place must be enclosed by fence, or otherwise, and such animal must be securely chained, so that such animal cannot go beyond said premises or reach persons or animals from within such premises. For the safety of the animal, no such chain may be less than eight (8) feet in length; accordingly, if such premises are not of sufficient area to maintain the animal as aforesaid, then such premises may not be used for such purpose.

"3.3. *Exceptions*:

"(a) *Medical Care*: Such animal may be beyond such premises for the purpose of transport of the animal for medical or veterinary care. In such instance the animal must be securely muzzled, and leashed or chained, in moving such animal from said premises and to and from such transport, and while in such transport, appropriate care, precaution and security must be maintained to preclude and prevent the animal from gaining access to the exterior of such transport, or from reaching persons or animals from within such transport.

"(b) *Permanent Removal from City*: Such animal may be beyond such premises for the purpose of transport of the animal permanently out of the limits of the City of Lynn. In such instance the procedure for security of such animal provided in the foregoing paragraph shall be employed. . . ."

ordinances were not revived. See *Commonwealth* v. *Gagnon*, 387 Mass. 768, 769-770 (1982), cert. denied, 461 U.S. 921, and 464 U.S. 815 (1983). We are confronted, therefore, with a series of three ordinances which, because of legislative action or operation of law, or both, are no longer in effect. Technically, therefore, the case is moot. In order to conserve judicial resources and to guide future conduct of the parties, we make some observations concerning the fourth ordinance. See *School Comm. of Boston* v. *Board of Educ.*, 352 Mass. 693, 697 (1967), appeal dismissed, 389 U.S. 572 (1968). Cf. *Reilly* v. *School Comm. of Boston*, 362 Mass. 689, 694-695 (1972). See also *Massachusetts Outdoor Advertising Council* v. *Outdoor Advertising Bd.*, 9 Mass. App. Ct. 775, 777 (1980). Because the case has become moot and since the June 30, 1987, ordinance was not before the judge, his findings and rulings cannot be used to determine its validity. Certain principles arise from the record before us, however, which do apply to the fourth ordinance or which may apply if the factual predicates remain unchanged. Despite argument that a facial attack on the ordinance is not available because, by statute, the *proceedings* governing a complaint for violation of a municipality's ordinance or by-law concerning licensing and restraining of dogs "shall not be deemed criminal," G. L. c. 140, § 173A (1986 ed.), we note that, simply because a law's provisions are "civil" and not "criminal," does not "save them from scrutiny under the vagueness doctrine." *Custody of a Minor (No. 2)*, 378 Mass. 712, 717 (1979). Moreover, since the ordinance imposes a penalty on offenders, involves forfeiture of property (banishment of the dog), and seeks to protect the public against injury, it is clearly penal in nature. See *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 686 (1986), and cases cited. The ordinance must therefore define the activity proscribed "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985), quoting *Kolender* v. *Lawson*, 461 U.S. 352, 357 (1983). This principle applies alike to statutes and municipal ordinances. *Commonwealth* v. *Williams, supra,* citing *Commonwealth* v. *Carpenter*, 325

Mass. 519, 521 (1950). Vague laws violate due process because "laws that do not limit the exercise of discretion by officials engender the possibility of arbitrary and discriminatory enforcement." *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 873 (1983).

The judge found that there is no scientific means, by blood, enzyme, or otherwise, to determine if a dog is a particular breed or any mixture thereof; that the dog officers of the city of Lynn used conflicting, subjective standards for ascertaining what animals are to be defined as "Pit Bulls" under all of the ordinances in question; and that the ordinances failed to provide law enforcement officials with ascertainable standards by which to enforce the ordinance.[9] Based on these findings, his ruling that the third ordinance — listing three types of dogs (American Staffordshire, Staffordshire Pit Bull Terrier or Bull Terrier), two of "dubious existence," and one ("any mixture thereof") impossible to ascertain — was void for vagueness, was clearly correct.

Assuming that testimony regarding breed identification and the findings based thereon remain unchanged, the fourth ordinance suffers from the same unconstitutional vagueness as the third. If identification by breed name does not provide sufficient ascertainable standards for enforcement, then the "definition" of "Pit Bull" in the fourth ordinance, which is devoid of *any* reference to a particular breed, but relies instead on the even less clear "common understanding and usage" of the term "Pit Bull," is not sufficiently definite to meet due process requirements. Dog owners do not receive fair notice from the ordinance of the conduct proscribed or the dog "types" covered by the law. *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 522 (1986).

---

[9] In his findings, the judge referred to all three ordinances. He later ruled that his finding regarding lack of ascertainable standards applied only to the third ordinance, leaving unchanged his finding that the dog officers used conflicting, subjective standards for ascertaining what animals are defined as "pit bulls" under the three ordinances in question. Because of our view that all of the ordinances have been repealed, it is unnecessary for us to consider the effect of this inconsistency.

The evidence would indicate that there may, indeed, be some dogs which, because of registration, known parentage or close conformance in appearance to commonly accepted standards representative of "Pit Bull," would be "commonly understood" to be "Pit Bulls." The evidence regarding the first three ordinances indicated, however, that some dogs might appear to be "Pit Bulls" yet belong to a breed "commonly understood" *not* to be "Pit Bulls," and that some dogs, "commonly understood" by the owner or dog registry to *be* a breed "known as Pit Bull" might not *appear* to be "Pit Bulls," and so escape the notice and enforcement efforts of the Lynn dog officers. The fourth ordinance, although stripped of some of the objectionable provisions of the third, does not provide any clearer a definition of "Pit Bull." Unlike an ordinance which generally prohibits the keeping of a "vicious dog," enforcement of which involves questions of fact whether the particular dog is vicious or known by its owner to be vicious,[10] or a strict liability restraint or dog bite law, such as G. L. c. 140, § 155, the Lynn Pit Bull ban ordinance depends for enforcement on the subjective understanding of dog officers of the appearance of an ill-defined "breed," leaves dog owners to guess at what conduct or dog "look" is prohibited, and requires "proof" of a dog's "type" which, unless the dog is registered, may be impossible to furnish. Such a law gives unleashed discretion to the dog officers charged with its enforcement, and clearly relies on their subjective speculation whether a dog's physical characteristics make it what is "commonly understood" to be a "Pit Bull."

Because the case is moot, the judgment shall be vacated with the notation that the decision is not on the merits, and the case is remanded to the Superior Court with directions to dismiss the action. See *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 708 (1976).

*So ordered.*

---

[10] See, e.g., Dayton *vs.* Dye, No. 9539 (Ohio Ct. App. Oct. 30, 1986) (construing Revised Code of General Ordinances of the city of Dayton, R.C.G.O. 91.50(B), prohibiting ownership of a vicious dog).