CONGREGATION BETH SHOLOM & COMMUNITY CENTER, INC.
*vs*. BUILDING COMMISSIONER OF FRAMINGHAM
& others.[1]

No. 88-P-667.

Middlesex. March 15, 1989. — May 8, 1989.

Present: DREBEN, KAPLAN, & FINE, JJ.

*Fire Prevention. Due Process of Law*, Vagueness of statute. *Words*, "Major alterations."

Where the owner of a building of more than 7,500 gross square feet in floor area undertook renovation work, including installation of new ceilings, floors, and walls, renovation of a kitchen, relocation of air conditioning ducts, and extension of the first floor by four and one-half feet to the face of the second floor overhang, and where the $60,000 cost of installation of an adequate system of automatic sprinklers in the building was relatively minor in comparison with the $550,000 estimated total cost of the work, the renovations constituted "major alterations" within the meaning of G. L. c. 148, § 26G, requiring the owner to install a sprinkler system in the building. [278-280]

The provision of G. L. c. 148, § 26G, requiring the installation of an adequate system of automatic sprinklers in certain buildings in which "major alterations" are commenced after July 1, 1983, was held not to be unconstitutionally vague. [280-281]

CIVIL ACTION commenced in the Superior Court Department on August 5, 1986.

The case was heard on a statement of agreed facts by *Edward M. Ginsburg*, J., sitting under statutory authority.

*John M. Kahn* for the plaintiff.

*Aaron K. Bikofsky*, Town Counsel, for the defendants.

FINE, J. The plaintiff, Congregation Beth Sholom & Community Center, Inc., filed a complaint in the Superior Court against various officials of the town of Framingham, raising the issue whether work it did in a building it owns and occupies

---

[1] The fire chief and fire prevention officer of the town of Framingham.

constituted "major alterations" and whether, as a consequence, it is required by the terms of G. L. c. 148, § 26G,[2] to install an adequate system of automatic sprinklers in the building. Section 2 of St. 1986, c. 284, provides that the automatic sprinkler requirement would apply "to construction of buildings or additions or major alterations commenced after July [1, 1983]."[3]

The parties filed a statement of agreed facts describing the work done by the plaintiff. The judge adopted the agreed facts and concluded, on the basis of the cost and scope of the work, that major alterations were involved. Judgment was entered ordering the plaintiff to comply with G. L. c. 148, § 26G, by protecting its entire premises with an adequate system of automatic sprinklers. We affirm the judgment.

The agreed facts included the following. The plaintiff owned a twenty year old building which it used for religious, educational, and social purposes. The building is a two-story, fire-resistant structure, the first story covering approximately 13,200 square feet. In 1985, the plaintiff obtained a building permit from the town of Framingham for proposed renovation work which was to cost approximately $550,000. The plans, as well as the building permit issued by the town, did not provide for automatic sprinklers. The work included, among other things, installation of new hung ceilings, floors and walls, renovation of a kitchen, relocation of air conditioning ducts and a stairway, and extension of the first floor by four and a half feet to the face of the existing second floor overhang in two locations,

---

[2] General Laws c. 148, § 26G, as amended by St. 1986, c. 284, § 1, states in part: "In any city or town which accepts the provisions of this section, every building of more than seventy-five hundred gross square feet in floor area or every addition of more than seventy-five hundred gross square feet in floor area shall be protected throughout with an adequate system of automatic sprinklers in accordance with the provisions of the state building code . . . ." The town of Framingham accepted the provision. The plaintiff's building had more than 7,500 gross square feet.

[3] Compare St. 1974, c. 214, inserting G. L. c. 148, § 26B, and providing in § 2 that the act would apply to buildings and structures the "substantial alteration" of which began after a certain date. Contrast G. L. c. 148, § 26A ½, providing for a phased-in requirement for automatic sprinklers in high-rise buildings through 1998.

adding 210 square feet of space. While the work was in prog-
ress, the defendant town officials notified the plaintiff that they
considered the work to be "major alterations" for purposes of
G. L. c. 148, § 26G. The plaintiff completed the work without
installing a sprinkler system and brought this suit seeking a
determination that the work did not constitute "major altera-
tions."

The statute does not define "major alterations." While "alter-
ation" has been defined, the purpose of the provision in which
the word appeared was different from the provision in issue.[4]
In the one case we have found which arose in a similar context
to the present one, the court stated that the word " '[a]lteration'
denotes a change or substitution in a substantial particular of
one part of a building for a building different in that particular."
*Commonwealth* v. *Hayden*, 211 Mass. 296, 297 (1912). Com-
pare *Boston & Albany R.R.* v. *Department of Pub. Util.*, 314
Mass. 634, 637-638 (1943).[5] We assume that the meaning of

---

[4]For example, G. L. c. 143, § 1, as appearing in St. 1972, c. 802, § 12,
defines "alteration" for purposes related to building inspection and regulation
as a "change in or addition to a building which reduces the means of exit
or fire resistance or changes its structural support, use or occupancy."

Section 201.3 of the State Building Code defines "[a]lteration" as [a]
change or modification of a building or structure, or the service equipment
thereof, that affects safety or health and that is not classified as an ordinary
repair." 780 Code Mass. Regs. § 201.3 (1980). "Ordinary repairs" are:
"Any maintenance which does not affect structure, egress, fire protection
systems, fire ratings, energy conservation provisions . . . , plumbing,
sanitary, gas, electrical, or other utilities." *Id.* "Repair" is defined as "[a]ny
maintenance which affects structure, egress, fire protection systems, fire
ratings, energy conservat[ion] provisions . . . , use, occupancy or utilities.
A buil[d]ing permit is required." *Id.*

Sometimes the need to define the term arises in the context of a lease
dispute. See *Justine Realty Co.* v. *American Can Co.* 119 Ill. App. 3d 582,
584-585 (1983). Sometimes it arises in the context of a zoning dispute. See
*D'Ambra* v. *Zoning Bd. of Appeal of Attleboro*, 324 Mass. 61, 62 (1949);
*Nichols* v. *Board of Zoning Appeal of Cambridge*, 26 Mass. App. Ct. 631,
634 (1988).

[5]Compare G. L. c. 22, § 13A, as appearing in St. 1986, c. 642, § 2,
prohibiting "construction, reconstruction, alteration or remodeling of a pub-
lic building except in conformity with . . . regulations [relating to the
handicapped]," which defines alteration as "external or internal rehabilitation
or renovation for which a building permit is needed or for which the cost

"alteration" in § 26G conforms to that very general, if time-worn, definition. We must still determine the meaning intended for the phrase "major alteration." To determine the meaning of those words we consider how ordinary people would understand them in light of the legislative objectives to be achieved.

The automatic sprinkler requirement, applicable to relatively large nonresidential buildings, is a fire safety measure. The Legislature obviously intended, through the grandfather clause in which the words appear, to give some protection to owners of older buildings against the large expense of installing sprinklers. Fire safety concerns would predominate, however, when, because of certain changes to an older building, imposition of the sprinkler requirement would be reasonable. This would occur whenever an older building is being added to,[6] or when such significant work is being done to it that the extra cost of installing sprinklers would be moderate in comparison to the total cost of the work contemplated. It would also occur when the physical work being done is of such scope that the additional effort required to install sprinklers would be substantially less than it would have been if the building were intact. In the context of the statute, therefore, "major alterations" would include any work, not repairs, which is "major" in scope or expenditure, and which results in changes affecting a substantial portion of the building. That definition comports, we think, with both the common understanding of the term and the objective the Legislature sought to achieve.

We do not think the judge erred in this case in finding that the work done by the plaintiff constituted major alterations within the meaning of the statute. The work to be done and changes to be made affected a substantial portion of the building. The amount the installation of sprinklers would have cost,

---

of such rehabilitation or renovation exceeds five per cent of the full and fair cash value of the building, or any work determined to be alteration by a state or local building inspector."

[6] See St. 1986, c. 284, § 1, which provides that in the case of an addition under G. L. c. 148, § 26G, automatic sprinklers would be required only in the addition.

$60,000, was relatively minor in comparison with the estimated total cost of the work, $550,000. A substantial amount of work was done on the ceilings, and the failure to install the sprinklers at the time the work was in progress will result in an additional cost of $50,000 for their installation. Given the nature and cost of the work done, and given the original estimated expense of installing the sprinklers, particularly in light of their importance from the viewpoint of fire safety, the work could properly be found to constitute "major alterations," and the installation of automatic sprinklers at the time the work was performed was both statutorily required and reasonable.

We reject the plaintiff's argument that a contrary result is required because failure to install an adequate sprinkler system may subject it to criminal prosecution. G. L. c. 148, § 30. The plaintiff contends that the statutory provision in issue is void for vagueness. See *Alegata* v. *Commonwealth*, 353 Mass. 287, 293 (1967); *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 522 (1986); *American Dog Owners Assn., Inc.* v. *Lynn*, 404 Mass. 73, 78-79 (1989). The question is whether due process is violated because people of ordinary intelligence would have to guess as to the meaning of the phrase "major alterations" or because its meaning is so unclear that it could give rise to arbitrary and discriminatory enforcement. See *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 873 (1983).

Although greater specificity in definition is possible and would certainly be helpful to guide both property owners and enforcement authorities, we see no constitutional violation. See *Commonwealth* v. *Great Atl. & Pac. Tea Co.*, 404 Mass. 476, 482 (1989). It is true that the statute involves a non-mathematical standard which raises questions of fact. See *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985), and cases cited (legislative language need not have "mathematical precision"). *American Dog Owners Assn., Inc.* v. *Lynn*, 404 Mass. at 80 (suggesting that ordinance prohibiting keeping of "vicious dog" would satisfy due process although viciousness is a question of fact); *People* v. *Weaver*, 147 Cal. App. 3d Supp. 23, 36-37 (1983) (statute prohibiting, among other things, "sub-

stantial" obstruction of natural flow of water not unconstitutionally vague). We think, however, the term "major alterations," as we have construed it, has a sufficiently clear meaning to satisfy constitutional standards. See *Commonwealth* v. *Great Atl. & Pac. Tea Co.*, 404 Mass. at 482. Compare *Chief of the Fire Dept. of Worcester* v. *Wibley*, 24 Mass. App. Ct. 912, 913-914 (1987).

Moreover, the statutory civil remedy is more likely to be utilized than the criminal one. Compare *Simon* v. *Solomon*, 385 Mass. 91, 102-103 (1982). Should there be a criminal prosecution under G. L. c. 148, § 30, for failure to install a sprinkler system, it would have to be preceded by an order of the head of the fire department, and the opportunity would exist before prosecution to test the validity of such an order in a civil proceeding. Where, as in this case, the issue is not whether an adequate sprinkler system has been installed but whether G. L. c. 148, § 26G, applies at all, resolution in a civil forum is appropriate.

In a close case such as this, where a nonfrivolous civil proceeding has been brought in good faith but the work has been completed without the installation of sprinklers, the head of the fire department, who by statute is the enforcing official, should, before commencing any prosecution, allow a reasonable time for compliance. He should also consider whether the work might be done in phases and whether, consistent with safety, the sprinkler requirement may be relaxed in some portions of the building.

*Judgment affirmed.*