## FRANCIS FLINT[1] & another[2] *vs.* COMMISSIONER OF PUBLIC WELFARE.

Suffolk. November 6, 1991. - April 10, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Moot Question. Medicaid. Home Care for Disabled Children Program. Department of Public Welfare. Administrative Law*, Substantial evidence, Agency, Regulations. *Regulation.*

An appeal seeking a declaration that regulations of the Department of Public Welfare setting forth eligibility criteria for certain optional Medicaid benefits were invalid became moot where, because of legislative action eliminating the program under which the plaintiffs claimed benefits, no actual controversy remained. [418-419]

There was no merit to contentions by plaintiffs claiming benefits under a certain optional Medicaid program administered by the Department of Public Welfare that, by raising a claim under G. L. c. 30A that the department's denial of Medicaid benefits was based on an error of law, they were entitled to retroactive benefits if the program's criteria were illegally narrow at the time they had applied, and that their claim for retroactive benefits was similar to a damage claim and was not made moot by a subsequent change in the relevant law. [419]

A class action claim pursuant to Mass. R. Civ. P. 23 seeking a declaration that regulations of the Department of Public Welfare setting forth eligibility criteria for certain optional Medicaid benefits were invalid became moot where, because of legislative action eliminating the program under which the plaintiffs claimed benefits, no actual controversy remained. [420]

In a proceeding before a welfare appeals referee in the Department of Public Welfare with regard to a severely disabled child's application for benefits under a certain optional Medicaid program for disabled children, there was substantial evidence to support the referee's decision upholding the department's program director's denial of the child's application on the ground that she did not require the level of care (i.e., "skilled nursing services") necessary for eligibility. [420-423]

---

[1]By his mother, Dorothy Flint.

[2]Theresa Hesse, by her father, John Hesse.

CIVIL ACTION commenced in the Superior Court Department on October 12, 1988.

The case was heard by *Elbert Tuttle*, J., on motions for class certification and for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Nancy Lorenz* (*Linda M. Long* with her) for the plaintiffs.

*William W. Porter*, Assistant Attorney General, for the Commissioner of Public Welfare.

LYNCH, J. The plaintiffs appeal, pursuant to G. L. c. 30A, § 15 (1990 ed.), from decisions of a Superior Court judge allowing the defendant's motion for summary judgment, and denying the plaintiffs' motion for class certification. We transferred the matter here on our own motion. Although several issues were properly decided in the defendant's favor, statutory changes have rendered the request for declaratory relief moot. We therefore affirm in part and vacate in part the judgment for the defendant.

Francis Flint and Theresa Hesse are severely disabled children who applied for benefits under the Kaileigh Mulligan Home Care for Disabled Children Program (program).[3] The program director of the Department of Public Welfare (department)[4] denied each application on the ground that the

---

[3]This program is an optional Federal Medicaid program whereby parental income is not considered (added to the child's income) in determining eligibility for Medicaid benefits for certain children cared for at home, rather than institutionalized. 42 U.S.C. § 1396a (e)(3) (1988). Prior to its adoption, parental income was considered available to children at home, even if they were eligible for institutional care, but was not considered available to children in institutions. The program was established to eliminate any incentive which might previously have existed to place a child in an institution to obtain Medicaid reimbursement. Massachusetts adopted the program in 1988. G. L. c. 118E, § 10, as amended through St. 1988, c. 23, § 42. Statute 1991, c. 138, § 181, amended G. L. c. 118E, § 10, to eliminate the program. Inconsistently, the program is included in the Commonwealth's appropriations for fiscal year 1992. See note 5, *infra*.

[4]The department is the agency responsible for administering the Medicaid program in Massachusetts and is authorized to promulgate rules and regulations in accordance with State and Federal law. G. L. c. 118E, § 4 (1990 ed.). The department had adopted eligibility regulations for participation in the program. 106 Code Mass. Regs. § 507.200 (1987).

child did not meet the program's eligibility criteria. Thereafter the plaintiffs exercised their right to a hearing before a welfare appeals referee. The referee upheld the denials on the ground that the children did not require the level of care necessary for eligibility.

At the time of the hearing on his application, Flint was a thirteen year old boy, who functioned cognitively at a twelve year old level. He has severe cerebral palsy, is confined to a wheelchair, is unable to communicate verbally, and is completely dependent on others to perform the activities of daily living. He cannot bathe, feed, dress, or toilet himself. He is a day student at the Massachusetts Hospital School and communicates by using a "word board."

At the time of the hearing on her application, Hesse was a fifteen year old girl, who functioned cognitively and developmentally at an age under twelve months. She has cerebral palsy, microcephaly, encephalopathy, seizure disorder, and Rett's Syndrome. She is confined to a wheelchair, is nonverbal, and is completely dependent on others to perform the activities of daily living. She attends the Cape Cod Collaborative School.

Flint brought a timely complaint in the Superior Court seeking judicial review of the department's decision denying him the benefits of the program, and requesting declaratory and injunctive relief to invalidate the department's regulations setting forth eligibility criteria for the program. Subsequently, Flint amended the complaint, seeking to maintain the suit as a class action pursuant to Mass. R. Civ. P. 23, 365 Mass. 767 (1974). Hesse's motion to intervene pursuant to Mass. R. Civ. P. 24 (b), 365 Mass. 769 (1974), was allowed.

The plaintiffs' motion to certify the class was denied, and after stipulating to the facts, the parties moved for summary judgment. The defendant's motion for summary judgment was allowed and the plaintiffs' was denied.

1. *The plaintiffs' motion for summary judgment.*

a. *Mootness.* We ordinarily refuse to render decisions in the absence of an actual controversy. We have held that

cases become moot because of material changes in a statute or ordinances on which a claim is based. See *American Dog Owners Ass'n* v. *Lynn*, 404 Mass. 73, 78 (1989); *Caputo* v. *Board of Appeals of Somerville*, 330 Mass. 107, 111-112 (1953). See also *Colangelo* v. *Board of Appeals of Lexington*, 407 Mass. 242, 248 (1990). Here the program under which the plaintiffs claim benefits no longer exists.

The Legislature eliminated the program by St. 1991, c. 138, § 181.[5] Since the program no longer exists, no actual controversy remains. Therefore, the declaratory relief sought by the plaintiffs should not be granted.

b. *Retroactive benefits.* The plaintiffs argue that by raising a claim under G. L. c. 30A (that the department's denial of Medicaid benefits was based on an error of law), they are entitled to retroactive benefits if the program's criteria were illegally narrow at the time they applied. They argue further that their claim for retroactive benefits is similar to a damage claim and is not made moot by a subsequent change in the relevant law. See *Powell* v. *McCormack*, 395 U.S. 486, 495-500 (1969); *Hubrite Informal Frocks, Inc.* v. *Kramer,* 297 Mass. 530, 535-536 (1937); *Princiotta* v. *New England Tel. & Tel. Co.*, 532 F. Supp. 1009, 1011 (D. Mass. 1982).

The plaintiffs seem to assume that the mere act of appealing from the original denial of benefits, if decided in their favor, would have entitled them to retroactive benefits. Although similarities may exist, claims for Medicaid benefits are not damage claims. Additionally, the record does not demonstrate that a retroactive benefit claim was raised either in the Superior Court or before the department. Furthermore, the complaints make no claim for retroactive benefits.

---

[5]Statute 1991, c. 138, § 181, amended G. L. c. 118E, § 10, by eliminating the language which originally provided for the program. Line item 4402-5000 in St. 1991, c. 138, § 2, however, provides that the medical assistance program for fiscal year 1992 continue to provide an appropriation for the program. Thus, the program is funded for fiscal year 1992, but is no longer authorized by statute.

c. *Class action.* The class action claim for declaratory relief fails for mootness for the same reason as the individual plaintiffs' claims.

2. *Hesse's substantial evidence claim.*[6]

Hesse argues that the department's decision that she did not meet the eligibility criteria of the program at the time that she applied was not supported by substantial evidence.[7]

A reviewing court must determine whether an agency decision is supported by substantial evidence "upon consideration of the entire record, or such portions of the record as may be cited by the parties. The court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7) (1990 ed.). This standard of review is highly deferential to the agency on questions of fact and reasonable inferences drawn therefrom. *Massachusetts Mun. Wholesale Elec. Co.* v. *Energy Facilities Siting Council*, 411 Mass. 183, 199 (1991). See *Fitchburg Gas & Elec. Light Co.* v. *Department of Pub. Utils.*, 394 Mass. 671, 681 (1985).

The eligibility criteria of the program are set forth at 106 Code Mass. Regs. § 507.200 (1987).[8] The regulations stated in pertinent part:

> "(A) The Home Care for Disabled Children Program allows a child age 18 or under who is severely disabled to remain at home without consideration of parental income and assets provided the child meets the following criteria.

---

[6] It is undisputed that there is substantial evidence to support the department's decision denying benefits to Francis Flint under the then-existing regulations.

[7] "Substantial evidence" is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1990 ed.).

[8] The regulations were revised minimally in 1989. We review the 1987 language at issue in this case.

"(1) The child's countable assets and income would be within the SSI standard, if he or she were in a medical institution (Sections 505.110(B) and 506.420); and

"(2) The child is a disabled individual as defined in Title XVI of the Social Security Act; and

"(3) The State has determined that the child requires a level of care provided in an acute hospital, chronic hospital, or pediatric nursing home as described in Subsections 507.200 (B), (C), and (D); and

"(4) It is appropriate to provide such care for the individual outside the institution; and

"(5) The estimated amount that would be expended for medical assistance for the individual for such care outside an institution is not greater than the estimated amount that would otherwise be expended for medical assistance for the individual within an appropriate institution.

". . .

"(D) To receive treatment in a pediatric nursing home the child must be non-ambulatory and function at a cognitive level of 12 months or less as indicated by an approved developmental assessment performed by the child's primary care physician or by another professional prescribed by the primary care physician; and require the following care:

"(1) supervision and direct skilled nursing care as provided by a registered nurse, seven days a week; or

"(2) daily management and direct skilled nursing services as provided by a registered nurse at least weekly, and substantiated by the delivery of direct

daily care by a licensed practical nurse or nurse's aide; and

"(3) assistance in all ADL's; and

"(4) skilled therapeutic services five days a week, or a combination of different skilled services on different days, but at least one skilled service every day; and

"(5) treatment by a physician at least once every 30 days."

Hesse argues that the department's determination that she did not meet the eligibility requirements of the program was based on its determination that she did not require "daily management and direct skilled nursing services as provided by a registered nurse at least weekly, and substantiated by the delivery of direct daily care by a licensed practical nurse or nurse's aide." 106 Code Mass. Regs. § 507.200 (D) (2).

The term "skilled nursing services" is not defined in the program regulations. The parties have turned for such definition to other department regulations establishing the minimum medical criteria for determining a recipient's need for skilled nursing facility services or intermediate care facility services provided under the Medical Assistance Program. See 106 Code Mass. Regs. §§ 456.251-456.270 (1989).

Hesse argues that she meets the requirements for "skilled nursing care" as defined in § 456.256 (A) because she needs skilled care and observation to prevent her condition from deteriorating; specifically, that this includes both the observation for apnea and prevention of decubitus ulcers. The regulations do not provide that the need to monitor for apnea and prevention of decubitus ulcers requires skilled nursing services.[9]

---

[9] Title 106 Code Mass. Regs. § 456.254 (I), lists *treatment* of (not prevention of) deep decubitus ulcers as a skilled nursing service.

Furthermore, we note that § 456.256 (A)(3) provides: "When the recipient is recommended or approved for skilled nursing facility services under the criteria in this subsection, the recipient's medical record must clearly indicate the reasons that skilled management of those services is required." In the record before us, there is no clear indication that skilled nursing facility services are required for Hesse's condition involving apnea or decubitus ulcers.

Finally, Hesse points to the fact that at the school she attends, a registered nurse is available to monitor her daily physical status. She points to no evidence, however, to meet the requirement of "daily management and direct skilled nursing services *as provided by a registered nurse at least weekly*" (emphasis added). § 507.200 (D)(2). The referee found "[a]fter careful examination of the medical evidence and attention to the several instances where doctors and nurses have mentioned 'skilled services' I find that no where [*sic*] is there a delineation of a specific nursing service, which has been ordered, which would require performance by a registered nurse with the frequency required by regulations . . . . Skilled nursing services are being provided on an intervention basis." That a registered nurse is generally available on a daily basis does not require the finding that Hesse was provided skilled nursing services by a registered nurse at least weekly. We conclude that the referee's finding that Hesse did not meet the skilled nursing care requirements of the regulation was supported by substantial evidence. Therefore, so much of the judgment dismissing Hesse's claim because she did not meet the eligibility requirements of the program is affirmed. The rest of the case is moot.

The remainder of the judgment, therefore, shall be vacated with the notation that this aspect of the decision is not on the merits, and the case is remanded to the Superior Court with directions to that effect. *American Dog Owners Ass'n* v. *Lynn*, 404 Mass. 73, 80 (1989). See *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 708 (1976).

*So ordered.*