Doerfer, J.
Plaintiffs, the City of Quincy (“Quincy”) and the Boston Water and Sewer Commission (“Commission”) commenced this declaratory judgment action to obtain a ruling that the defendant, Massachusetts Water Resources Authority (“MWRA”) used unlawful procedures to allocate water and sewer charges. The case came before the court on June 29, 1994 for hearing on plaintiffs’ motions for partial summary judgment. For reasons stated below, plaintiffs’ motions are denied.
BACKGROUND
The pleadings, affidavits, answers to interrogatories, and requests for admissions in this case reveal the following undisputed facts. In 1984, the legislature enacted St. 1984, c. 372, §1 creating the MWRA, a body which was to operate, regulate, finance, and improve the system of water delivery and sewer collection, treatment, and disposal for forty-three cities and towns (“local bodies”) in .the Metropolitan Boston area.[2] The MWRA assumed the responsibilities of its predecessor, the Metropolitan District Commission (“MDC”). The MWRA sewage collection system consists of approximately 230 miles of interceptor sewers which collect wastewater flows from 5400 miles of local sewers.
Quincy owns approximately 240 miles of sewers which connect to the MWRA system. Over the past decade, Quincy has spent approximately $2,125,000 on programs to reduce the amount of infiltration of groundwater into sewers caused by defective pipes and inflow of stormwater into its local sewers, and on programs to conserve water. Quincy has spent approximately $8,180,000 on upgrading and improving its sewer system.
In 1992, Quincy received the third highest assessment for MWRA sewer services, or $9,303,672, equal-ling approximately four percent of the total amount which the MWRA had assessed. The 1993 assessment totaled $10,605,978. The 1994 charges increased by approximately fourteen percent.
The Commission owns and operates approximately 1200 miles of water distribution pipes and 850 miles of local sewers connecting to the MWRA’s water and sewer systems. The Commission alleges that it has spent over $300 million to improve,, rehabilitate, and modernize its water and sewer systems. It has begun programs to reduce or eliminate infiltration of groundwater and inflow of stormwater and to reduce the strength and volume of flows into its system.
The Commission has historically received the highest assessment for water and sewer services. In 1992, the MWRA Board of Directors allocated $26,592,615 (approximately forty-four percent of the total water charges) to the Commission. In 1993, the Commission’s rates equalled $28,607,493, or forty-five percent of the total charges. In 1992, the Commission owed $69,183,441 (thirty percent of the total) for sewer charges, and in 1993, the amount due rose to $72,722,280. The 1994 amounts increased by $2,014,878 for water use and by $3,538,839 for sewer use.
From 1985 to 1994, MWRA used the same multi-tiered process to allocate annual sewer charges[3] among the local bodies as had been used by the MDC.[4] First, the MWRA calculated the total charges to be collected for that fiscal year, dividing the costs between operation and management (“O&M”) expenses and capital costs.[5] Then, looking to census reports, submissions from the local bodies and industrial users, and measurements from treatment plants, the MWRA utilized the “population and population equivalent” (“P&PE”) method to assess a portion of the total charges upon each local body.
The P&PE methodology allocated the costs to be assessed according to volume (the typical flow to *541 treatment plants), capacity (the incremental system size required to handle peak flow), and suspended solids (the solid materials carried in the wastewater stream). The underlying assumption of the P&PE method was “that the relative contribution of wastewa-ter flow and loadings from a community is approximately proportional to the community’s relative population." Plaintiffs Joint Document Appendix for Their Motions for Partial Summary Judgment, Exh. 28 (“Joint Appendix”). Under the P&PE method, the O&M expenses were allocated according to (i) the proportion that each local body’s contributing population[6] bore to the total population within the MWRA system and (ii) the proportion that the local body’s contributing “population equivalents”[7] for large industrial users bore to the “population equivalents” of all large industrial users in the MWRA system. The capital or debt service costs were apportioned to each local body according to the ratio which that body’s census population and population equivalents bore to the MWRA system’s total population and population equivalents.
The MWRA admitted in 1988 through its Acting Director of Engineering that the P&PE method did not identify actual flows generated by each local body or provide incentives for local bodies to reduce their wastewater flows or to promote conservation. Defendant Massachusetts Water Resources Authority’s Response to Plaintiff Boston Water and Sewer Commission’s First Set of Requests for Admissions, Nos. 3, 8. The methodology did not give account to local bodies’ differing rates of infiltration and inflow. Id., No. 7. The MWRA also admitted that it never determined whether the plaintiffs’ historic investments in their sewer systems were disproportionate to the investments of other local bodies. Id., Nos. 27, 28.
In 1985, the MWRA began to discuss alternative methods of allocating charges for sewer and water use. The MWRA published a “Request of Qualifications/Proposals for the Preparation of a Comprehensive Study of the Environmental, Social, and Economic Impacts of Authority Charges and an Analysis of Potential Rate Methodologies” seeking consultants to “d. determine 5-10 year expenditures by community for: 1) capital outlay for facilities and lines, and 2) operation and maintenance; . . . g. determine which, if any, member communities employ a system of rate charges that promote conservation; i. determine which communities are expending significant revenue to eliminate water loss and/or to prevent inflow infiltration or overflow in their sewer system . . . ; and j. develop guidance for the [MWRA] on how to encourage retail rate structures which conform to applicable law and MWRA policies.” Joint Appendix, Exh. 9, at 2.
The MWRA engaged several consulting firms, including KMG Main Hurdman, Black & Veatch, and Peat, Marwick, Mitchell & Co. (“Peat, Marwick”) to examine alternative methodologies. In its agreement with Peat, Marwick, for example, the MWRA requested a study “to enable the [MWRA] to implement wholesale water and sewer rate methodologies . . . which are consistent with the purpose of its enabling legislation.” More specifically, the MWRA assigned the task of determining the impacts of alternative methodologies, which were to be described “using at least the following measures: a. wholesale cost, b. ratio of wholesale cost to retail total rate revenue, c. ratio of wholesale cost to retail full budgetary (cash) cost, d. incentives encouraging prospective reduction of water use, e. incentives encouraging prospective community investments in their water and sewer systems, f. incentives encouraging water protection, augmentation and/or reclamation of local water supply sources, g. incidence of relative cost changes on groups of communities having similar socio-economic characteristics.” Joint Appendix, Exh. 20, Attachment A. Both Black & Veatch and Peat, Marwick investigated alternative methodologies, including a unit cost method, under which “estimates of sanitary sewage discharge are made for each community, which reflects the particular water usage patterns of that community’s households and commercial and industrial establishments .. . [U]nder the unit cost approach differentiation of sewage discharge quantities is possible which allows for better recognition of cost responsibility.” Joint Appendix, Exh. 19, at 12.
Relying upon the reports of Black & Veatch and Peat, Marwick, the MWRA prepared a report called “Environmental, Social and Economic Impacts of Water and Sewer Charges” (“ESEIR”)[8] in which the MWRA presented the disadvantages and advantages of the current and alternative methodologies. The MWRA decided to continue using the P&PE methodology, however, explaining its rationale in the ESEIR:
With respect to sewer rate methodologies, the Board considered the advantages and limitations of all the alternatives developed for review, and their dollar impacts upon member communities. Notwithstanding the advantages that might be gained with respect to several rate-making criteria (more economic pricing, more understandable methodologies, etc.), the Board was reluctant to change the current sewer charge estimation methods for alternative methods which also utilize estimates of member usage (and cost shares). The Board seeks to measure actual use through flow meters as the most accurate — and equitable — basis for allocating costs. Until the [MWRA] can meter its sewerage system, any interim wholesale methodological change may unfairly burden some communities.
Joint Appendix, Exh. 23, at 29 (emphasis added).
In 1993, the legislature directed the Advisory Board of the MWRA to prepare a cost analysis of alternative methodologies. Anticipating the use of measurements from the installation of a systemwide wastewater metering program completed in January 1994,[9] the Advisory Board studied various combinations of *542 measures of wastewater flow and strength and community population. On June 23, 1994, the Advisory Board adopted a revised methodology under which O&M costs are to be allocated based on metered flow. Capital costs are to be allocated in the following manner: [2]/8 based on maximum monthly flow, [3]/s allocated proportionally to contributing population, and [3]/s allocated proportionally to census population. On July 11, 1994, the legislature instructed the MWRA to implement this methodology for fiscal year 1996. St. 1994, c. 60, §220A.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving pariy is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991). “If the moving pariy establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a germane issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleading, and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rule 56(c) also states that “summary judgment, when appropriate, may be rendered against the moving pariy.”
Statute 1984, c. 372, §1 created the MWRA to achieve several goals, purposes, and objectives. In particular, § 1(b) (iii) states that one goal is the “establishment and administration of equitable charges, consistent with the objectives of this act to conserve water and improve the qualify of the environment...” Section 8(m) of St. 1984, c. 372 provides some guidance on the setting of rates or charges, stating that the charges “shall also reasonably provide for abatement, reduction and prevention of infiltration and inflow of ground waters, surface waters or storm waters into the sewer system . . .” Section 8(e) provides that “In order to attain its statutory purposes to promote water conservation, protect the adequacy of a pure water supply, reduce wastewater flow and improve environmental quality, the [MWRA] is authorized and directed: (i) to promote water conservation and environmental quality through its schedule of charges . . .” Finally, the MWRA must comply with Section 10(a) of c. 372, which instructs that:
The charges of the [MWRA] . . . shall give account to (i) actual costs to the [MWRA] of providing services, (ii) reasonable provisions in the nature of incentives and disincentives to promote conservation of resources and protection of the environment and to induce the protection, maintenance and improvement of the sewer and waterworks systems and of sewer and water systems of local bodies, (iii) reasonable provisions reflecting the contribution made by local bodies through expenditures including, but not limited to, leak detection, system rehabilitation and other water management programs, sewerage inflow/infiltration reduction projects, separation of combined sewers and other projects which improve the overall efficiency of the [MWRAJ’s and local bodies’ service delivery, (iv) reasonable provisions to reflect respective local bodies’ disproportionate historic investment in the sewer and waterworks systems and in the former [MDC] sewer system and [MDC] water system used in the services delivered by the [MWRA], (v) reasonable interest charges and penalties for delinquency in payment.
Plaintiffs in this case do not dispute the determination which the MWRA makes as to the total amount of charges it must collect from the local bodies, but challenge the method by which the MWRA allocates these charges among the member communities.
The standard of review
Plaintiffs have framed this action as one for declar-atoiy judgment under c. 231A challenging the rates which the MWRA has assessed. Plaintiffs assert that the court should construe the requirements of St. 1984, c. 372 strictly and conclude that the MWRA has made an error of law by failing to take into account the § 10(a) factors in determining the rates. Plaintiffs argue that they are entitled to summary judgment because the MWRA clearly did not comply with the provisions of c. 372. Defendant, on the other hand, argues that the MWRA’s rate setting methodology must be reviewed as a regulation and that the rates should be upheld as a discretionary act of an agency. See Steinbergh v. Rent Control Bd. of Cambridge, 410 Mass. 160, 162 (1991). It is clear that the determination of whether this court is being asked to review a regulation, as opposed to a rate, affects the standard of review to be applied and the relevant burdens of proof.
Section 10(a) of c. 372 provides that the MWRA “shall establish and adjust charges which may be denominated as charges, fees, rates, assessments or otherwise as the [MWRA] may reasonably determine, for services, facilities and commodities furnished or supplied by the [MWRA].” Section 10(a) explains that “[t]he charges of the [MWRA] for deliveiy of water and *543 for sewage collection, disposal and treatment services shall be established as charges of general application to be borne by the local body utilizing such services . . . [These] charges of general application shall be adopted, and on not less than an annual basis reviewed and if necessary revised, in accordance with procedures for notice and a hearing as provided by chapter thirty A of the General Laws . . .’’In contrast, charges of special application are those charges “for compensation for special or temporary services.” Charges of special application “shall not be regulations for purposes of chapter thirty A of the General Laws.” C. 372, § 10(a) (emphasis added). After close examination of the statutory language, this court concludes that the legislature intended, by implication, that charges of general application be considered regulations. Plaintiffs in this case challenge charges of general application, or those charges or assessments which have been levied against them for the use of the MWRA's services or facilities. Thus, this court will consider the assessments at issue as regulations, and will review them as such under G.L.c. 30A.
Massachusetts G.L.c 30A, §7 states that “[u]nless an exclusive mode of review is provided by law, judicial review of any regulation . . . may be had through an action for declaratoiy relief in the manner and to the extent provided under chapter two hundred and thirty-one A.” The Supreme Judicial Court has set forth the standards for judicial review of agency regulations. Borden, Inc. v. Commissioner of Pub. Health, 388 Mass. 707, 721, appeal dismissed, 464 U.S. 923, cert. denied, 464 U.S. 936 (1983). “The issue on review is not whether the regulation was supported by substantial evidence in the record before the agency,” but whether the regulation is “illegal, arbitrary, or capricious.” Id. at 721-22. Given that the MWRA’s setting of rates was not an adjudicatory proceeding,[10] plaintiffs must show “the absence of any conceivable ground upon which [the rates] may be upheld.” Id. at 722. Thus, in the case at bar, the court will defer to the MWRA, and will apply “all rational presumptions in favor of the validiiy of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.” Id. at 722-23.
Summary judgment is inappropriate
Plaintiffs assert that the P&PE method used by the MWRA failed to take into account 1) incentives and disincentives to promote resource conservation and environmental protection, 2) measures taken by local bodies to improve the efficiency of their sewer systems, 3) local disproportionate investment in the sewer system, and 4) penalties for late payment. See St. 1984, c. 372, § 10(a). The MWRA argues that the terms of c. 372 are not mandatory, given that the statute emphasizes the MWRA’s broad discretion and general powers, and does not give to the MWRA precise instructions on how to incorporate Section 10(a) factors into the rate setting process.
Plaintiffs in this action have failed to show that the MWRA’s reliance upon the P&PE methodology lacked any conceivable, rational basis. Borden, 388 Mass. at 722. First, there is ample evidence that the MWRA has acknowledged its duty to comply with the § 10(a) factors. The MWRA has engaged several consultants since 1985 to examine alternative methodologies which would provide incentives for reducing infiltration and inflow, and for improving conservation. The MWRA specifically charged Peat, Marwick, for example, to describe the advantages and disadvantages of particular methodologies in relation to these factors. Bearing in mind that one of the overriding objectives of the MWRA is to establish and administer equitable charges, c. 372, §l(b)(iii), the court will defer to the decision of the MWRA not to abandon the P&PE method in favor of alternative methods which also utilized estimates. The MWRA has stated its belief that the use of flow meters is “the most accurate — and equitable — basis for allocating costs.” Plaintiffs have not controverted the MWRA’s assertion that “any interim wholesale methodological change may unfairly burden some communities.” ESEIR, at 29. In upholding the MWRA’s decision, the court is persuaded by the assertion that the MWRA considered the advantages and limitations of all the available alternatives, and their monetary impacts upon local bodies.
Second, it is not clear that it was possible for the MWRA to take the §10(a) factors into account before the implementation of the metering program. The court agrees that the MWRA has not directly addressed the Section 10(a) factors in setting sewer rates. The general programs which allegedly reduce the charges before they are allocated among the local bodies are insufficient to fulfill the statutoiy mandate. See Defendant’s Answers to Plaintiff, Boston Water and Sewer Commission’s First Set of Interrogatories, No. 9 (“Commission’s Interrogatories”); Defendant’s Answers to Plaintiff Quincy’s First Set of Interrogatories, No. 5 (“Quincy’s Interrogatories”). Careful examination of the Customer Service Update (“Update”) which all local bodies must submit to the MWRA[11] also reveals that the MWRA has not requested information on improvements to the local sewer systems or efforts to conserve water.
The MWRA admits, however, that it has considered, but declined to include, specific provisions regarding each local body’s historic investment in its sewer system or explicit provisions to promote conservation. The MWRA has concluded that it is not feasible to measure these factors accurately, particularly in light of the fact that not every expenditure would reduce wastewater flow volume. Commission’s Interrogatories, No. 11 (“Some local expenditures, such as for system expansion to accommodate new residences and commercial establishments, may increase the *544 volume of wastewater flows or cause inefficiencies downstream in the system. Other expenditures may be necessary to maintain a local system, but fail to improve its quality or efficiency”).
Plaintiffs, on the other hand, have shown no evidence of a technical, mathematical, or reliable way to take such factors as conservation or the effect of improvements into account before the installation of the meters. Recalculation of sewer rates (and in the case of the Commission, water and sewer rates) over the past decade would rest entirely upon impermissible speculation.[12] Given the degree of deference to which the MWRA is entitled in this case, plaintiffs’ failure to present an alternative methodology which specifically accounts for each local body’s sewer use, and the complexity of this case, the court could not grant plaintiffs’ request for an order that the MWRA redetermine and reallocate water and sewer charges from FY 1985 through FY 1994.
The court has determined that plaintiffs may not obtain a declaration that the MWRA is liable for its past practices. With regard to future liability, it is well settled that a party is only entitled to declaratory relief if an actual controversy exists and intervention by the court will provide the parly with meaningful relief. A plaintiffs claims will be rendered moot where the cause of the alleged harm has been removed, or a remedy has already been put into place. See Knight v. Mills, 836 F.2d 659, 670 (1st Cir. 1987) (patient’s claim for declaration that he was entitled to psychological treatment was moot when he had been receiving the treatment and there was no suggestion that the treatment would be stopped); Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 419 (1992) (plaintiffs’ claims for declaratory relief arising from denial of Medicaid benefits under a particular program were moot where the program had been eliminated). In the present case, the MWRA has presented uncontroverted evidence that it has adopted a new method of ascertaining the degree to which each local body uses the system, by installing meters. In addition, on July 11, 1994, the Legislature passed St. 1994, c. 60, §220A, which provides that “The Massachusetts Water Resources Authority shall fully implement the sewer rate assessment methodology formulated by the Advisory Board’s Sewer Rate Methodology Committee of said Authority, as developed pursuant to Section 283 of Chapter 110 of the Acts of 1993.”[13] In light of the statutory mandate that the methodology to which plaintiffs object be replaced, plaintiffs cannot show that an actual controversy exists and that they are entitled to declaratory judgment regarding the MWRA’s past practices. See Flint, 412 Mass. at 419. In addition, plaintiffs have made no showing that the newly adopted methodology, relying in part as it does on metered rates, is inadequate to fulfill the MWRA’s statutory obligations. Defendants have stated that the meter system was only completed in January 1994, and that a full year of data will be necessary before the charges will reflect accurate measures of wastewater flows from each local body. Murray Affidavit, paras. 28-30. Consequently, plaintiffs are not entitled to judgment as a matter of law. Furthermore, under the circumstances of this case, it is appropriate to render summary judgment against the moving parties. Mass.R.Civ.P. 56(c).
ORDER
For the foregoing reasons, it is hereby ORDERED and ADJUDGED that plaintiffs’ motions for partial summary judgment are DENIED. It is also ORDERED that judgment be entered in favor of defendant.
It is further ORDERED that a declaration enter, DECLARING that the MWRA’s use of the P&PE methodology to allocate sewer charges among member communities was not arbitrary or capricious, but had a rational and conceivable basis, and therefore must be UPHELD. Accordingly, it is hereby ORDERED and DECLARED that plaintiffs’ case against the MWRA be DISMISSED.

 St. 1984, c. 372, §2(h) defines “local body,” as a “city, town, district, commission, or other political subdivision or instrumentality of the commonwealth responsible for providing by itself or through an officer, board, department or division thereof local water supply or local sewer services ...”

 Water charges have been based on actual metered use.

 The MWRA exercises its rate setting powers independently, and is not subject to the approval of any governmental department or agency.

 Capital costs are comprised of the expenses of debt service and long-term capital expenditures.

 The contributing population is the number of people in a community hooked up to the local sewer system. Affidavit of Kathleen R. Murray, para. 17.

 Under the P&PE method, large industrial, commercial, and institutional contributors of volume, capacity and suspended solids are translated into people equivalents. Affidavit of Kathleen R. Murray, para. 15.

 The MWRA prepared the ESEIR in accordance with c. 372, §8(e), which states that the MWRA “is authorized and directed: (i) to promote water conservation and environmental quality through its schedule of charges, to which end the [MWRA] shall prepare and publish no later than the second anniversary of the effective date of this act a comprehensive study of environmental, social and economic impacts of its charges to serve as a basis for the implementation of charges fully consistent with the objectives of this act. . .”

 The implementation of a metering program was complicated by the size of the MWRA system.

 Each June, after notice and public hearings, followed by review and recommendations by the MWRA Advisory Board and the MWRA staff, the MWRA Board of Directors establishes charges. The MWRA Board then allocates the amount due among the local bodies.

 The MWRA requires each local body to complete the Update by October 30 of every year. The Update “will give the MWRA essential water and sewer data for each community. This data will help determine each community’s FY94 MWRA sewer charges . . . The responsibility for accuracy, completeness, and timeliness rests solely with the community.” Joint Appendix, Exh. 39. The Update asks each local body to provide information on its 1) available water supply, volume of water sold, and number of water and sewer connections, 2) percent of sewered population, new residential connec *545 tions, and budget information, 3) financial situation, and 4) industrial large users.

 The court acknowledges that plaintiffs have only moved for partial summary judgment as to the issue of liability, “reserving the question of remedy for subsequent judicial attention.” A determination that no remedy would adequately compensate plaintiffs, however, renders it futile to deal solely with the issue of liability.

 St. 1993, c. 110, §283 directed the MWRA “to immediately provide all of the necessary resources, financial and otherwise, to the Massachusetts Water Resources Authority advisory board so that said board may conduct a cost analysis of sewer service in order to determine a rate methodology which fairly and equitably assesses the member communities . . . Notwithstanding the provisions of any general or special law to the contrary, the Massachusetts Water Resources Authority board of directors shall adjust said methodology for the communities ... no later than [April fifteenth], nineteen hundred and ninety-four and assess said communities according to the rate methodology that had been so recommended; provided, however, that said rate methodology . . . shall not take effect without further statutory authorization.” [Amended by St. 1994, c. 60, §220A].