Brassard, J.
This case comes before the court on plaintiffs appeal, pursuant to G.L.c. 30A, of a decision of the Contributory Retirement Appeals Board. The plaintiff claims that the decision of the Contributory Retirement Appeals Board was unsupported by substantial evidence in the administrative record, and that it was based upon an erroneous interpretation of the definition of “regular compensation” contained in G.L.c. 32, §1. As a result, he argues, the calculation of his retirement benefits pursuant to G.L.c. 32, §5 was flawed. For the following reasons, the decision of the Contributory Retirement Appeals Board is AFFIRMED.
BACKGROUND
The record which was before the Contributory Retirement Appeals Board reveals the following:
The plaintiff, Anthony Mastroianni, was the Director of Veterans’ Services and the Veterans’ Agent for the Town of Milford from 1953 to 1990. His position was treated as that of a Department Head, and his salary was set annually by the Town’s Personnel Board. Until the mid-1980s, Mastroianni’s salary was at parity with that of other Department Heads in Milford.
In the mid-1980s, a dispute arose between Mastroianni and the Board of Selectmen regarding the requirements of the state law covering the administration of veterans’ benefits. To pressure Mastroianni to *711 adopt the point of view of the Selectmen regarding the management of the benefits, the Personnel Board refused to increase his salary, while increasing the salaries of the other department heads. As a result, by 1988, Mastroianni’s salary was two levels below the salaries of similarly situated department heads.
By the spring of 1990, Mastroianni was considering resigning from his Milford position. At that time, he and Milford entered into negotiations concerning his resignation. On May 21, 1990, Mastroianni submitted a letter of resignation to the Selectmen which stated the following:
I, Anthony J. Mastroianni, hereby submit my resignation from my position of Director of Veterans’ Services/Veteran’s Agent effective July 31, 1990.
Notwithstanding the foregoing, should the 1990 Milford Annual Town Meeting fail to pass an increase in my salary for F.Y. 1990, retroactive to July 1, 1989, to the total sum of $46,250, this resignation shall have no force and effect.
I fully acknowledge and agree that this resignation is in consideration of the aforementioned increase in my annual rate of pay for F.Y. 1990 from the current approved rate of $31,878 to $46,250.
On June 11, 1990, the Town Meeting voted to pass the increase in salary which was described in Mastroianni’s letter, and accepted his letter of resignation.
Following his resignation, Mastroianni filed for superannuation retirement with the Milford Retirement Board. The Milford Retirement Board included the increased salary in calculating Mastroianni’s retirement benefits, and submitted the calculations to the Public Employees Retirement Administration (“PERA”) for approval. PERA, however, rejected the use of the $46,250 figure for calculating retirement benefits. Instead, it held that the $14,372 increase in pay was not “regular compensation” under G.L.c. 32, §1, and therefore should not be used in calculating the superannuation retirement benefits pursuant to G.L.c. 32, §5. Instead, PERA used Mastroianni’s prior salary level of $31,878 to calculate his retirement benefits.
Mastroianni appealed PERA’s decision to the Division of Administrative Law Appeals (“DALA”), which reversed PERA’s decision, and concluded that the $14,372 increase was a salary increase designed to make up for the years during which Mastroianni’s salary was out of parity with those of other department heads.
PERA appealed the DALA decision to the Contributory Retirement Appeal Board (“CRAB”). CRAB reversed DALA’s finding that the retroactive salary increase for fiscal year 1990 was to make up for his previously lower salary, but adopted each of DALA’s remaining factual findings. CRAB found that the salary increase was in consideration for Mastroianni’s resignation. As such, CRAB held, the increase was not compensation for services performed, and could not be considered to be “regular compensation” as that term is defined in G.L.c. 32, §1.
DISCUSSION
The plaintiff appeals the decision of the Contributory Retirement Appeals Board pursuant to G.L.c. 30A, §14, subsections (c) and (e), which allow the court to “set aside or modify the decision,” or compel action if “the substantial rights of any party may have been prejudiced because the agency decision is . . . [biased on an error of law; or... [unsupported by substantial evidence.” G.L.c. 30A, §14 (1992 ed.).
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. State Bldg. Code Comm’n, 11 Mass.App.Ct. 333, 334 (1981), citing Almeida Bus Lines, Inc. v. Department of Pub. Utils., 348 Mass. 331, 342 (1965). In reviewing an agency decision, the court is to be highly deferential to its findings of fact. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-421 (1982).
A. Substantial Evidence
The plaintiff claims that the decision of CRAB that Milford increased his salary in consideration of his resignation, and not to compensate him for services rendered, is unsupported by substantial evidence in the administrative record.
The court may set aside or modify an agency’s decision if it determines that the decision is “(u]nsupported by substantial evidence.” G.L.c. 3QA §14(7)(e) (1992 ed.). Substantial evidence is defined as “such evidence fis a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6) (1992 ed.). In reviewing an agency decision, the court “shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14 (7) (1992 ed.). “This standard of review is highly deferential to the agency on questions of fact and reasonable inferences drawn therefrom.” Flint v. Commissioner of Public Welfare, 412 Mass. 416, 420 (1992), citing Massachusetts Mun. Wholesale Elec. Co. v. Energy Facilities Siting Council, 411 Mass. 183, 199 (1991). The credibility of witnesses, and the weight to be given to their testimony is an issue for the hearing officers, and not for the court. Ramsdell v. Western Massachusetts Bus Lines, Inc., 415 Mass. 673, 676 (1993); Trustees of Deerfield Academy v. Director of the Div. of Employment Sec., 382 Mass. 26, 31-32 (1980).
Viewed in light of this standard, the CRAB decision is supported by substantial evidence. While the testi *712 mony of the plaintiff and of Gerald Moody, the Town Counsel, indicated that the pay increase was meant to compensate the plaintiff for past services and to put his pay level back in parity -with other department heads, the administrative record contains evidence which indicates a different purpose. Especially relevant to CRAB’s finding is the letter of resignation signed by the plaintiff and submitted to the Board of Selectmen, which letter specifically stated that the resignation was in consideration for an increase in his fiscal year 1990 salary.
A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982). Thus, while the court may have given more weight to the testimony of the plaintiff and of Moody than to the letter of resignation had it heard the case de novo, it would be improper for the court to substitute its judgment for that of CRAB. The letter of resignation supports CRAB’s finding that the salary increase was meant to be an incentive for the plaintiff to resign.
B. Error of Law
The plaintiff claims that CRAB erroneously interpreted the definition of “regular compensation” contained in G.L.c. 32, §1. As a result, he argues, the calculation of his retirement benefits pursuant to G.L.c. 32, §5 was flawed.[1] “An erroneous interpretation of a statute by an administrative agency is not entitled to deference.” Woods v. Executive Office of Communities and Development, 411 Mass. 599, 606 (1992).
General Laws c. 32, §1 states, in relevant part, that “ '[ijegular compensation’ . . . shall mean the salary, wages or other compensation in whatever form, lawfully determined for the individual service of the employee by the employing authority, not including bonus, overtime, severance pay for any and all unused sick leave, early retirement incentives, or any other payments made as a result of giving notice of retirement ...” G.L.c. 32, §1 (1989 ed., Supp. 1995).
The plaintiff argues that CRAB improperly interpreted the definition of “regular compensation” to exclude a resignation incentive. He bases this argument upon the distinction between a retirement incentive, which is specifically excluded from the definition, and a resignation incentive. Because the latter is not specifically excluded, he argues, it should fall within the catchall phrase “other compensation in whatever form.”
CRAB’s interpretation of the statute to exclude a resignation incentive, however, is consistent with the Supreme Judicial Court’s interpretation of G.L.c. 32, §1. In Boston Ass’n of School Adm’rs & Supervisors v. Boston Retirement Board, 383 Mass. 336 (1981), the SJC interpreted an earlier version of G.L.c. 32, §1, which did not specifically exclude retirement incentives from the definition of regular compensation, but which was otherwise substantially the same as the current version. The court stated: “In the words ‘salary, wages or other compensation in whatever form’ the last generic phrase takes its color of meaning from ‘salary and ‘wages’ll, and the whole refers to remuneration geared to work or services performed; moreover ‘regular,’ as it modifies ‘compensation,’ imports the idea of ordinariness or normality as well as the idea of recurrence. All this contrasts with ‘overtime’ and with the compendious ‘bonus’ which are to be excluded from the compensation that figures in computing retirement benefits. Taking §5(2)(a) together with §1, we find a safeguard against the introduction into the computations of adventitious payments to employees which could place untoward, massive, continuing burdens on the retirement systems.” Id. at 341 (internal citation omitted). The court held that payments made to employees as a retirement incentive were “not ‘regular compensation’ but have the character of premiums to particular individuals, beyond such compensation, which conform to the idea of a ‘bonus’ in the common understanding of that term.” Id. at 342.
Like the retirement incentives at issue in Boston Ass’n of School Adm’rs & Supervisors, a resignation incentive has the character of a premium or bonus, rather than of regular compensation. A resignation incentive is not an ordinary or normal payment for services rendered.[2] As such, upon ruling that the payment at issue was a resignation incentive rather than a payment for services rendered, CRAB properly excluded the payment from the calculation of benefits under G.L.c. 32, §5. The mere fact that the payment was not of a type which is specifically excluded under the definition of “regular compensation” does not compel the court to hold that the payment was “other compensation” for individual services. To hold that payments other than those which are specifically excluded are necessarily “regular compensation” would enable parties to easily bypass the requirements of Chapter 32, and to artificially increase employees’ retirement benefits. By utilizing terms such as “resignation” rather than “retirement,” or “compensation” rather than “bonus,” parties could avoid the dictates of the statute, thus giving rise to the “untoward, massive, continuing burdens on the retirement systems” about which the SJC was concerned. Id. at 341.
ORDER
It is therefore ORDERED that judgment enter AFFIRMING the decision of the Contributory Retirement Appeals Board, in calculating the plaintiffs retirement benefits.

Under G.L.c. 32, §5, the plaintiffs retirement benefits are calculated based upon his average rate of annual compensation for the three years immediately prior to his retirement.

Indeed, the plaintiffs resignation was specifically conditioned upon the retroactive increase in salary. If the Town Meeting had not voted the increase, presumably the plaintiff would have continued to work, and would have retired at the lower salary.