King, J.
Plaintiff, William O’Donnell (O’Donnell), seeks judicial review, pursuant to G.L.c. 30A, §14, of a Contributory Retirement Appeal Board (CRAB) decision, dated September 15, 2000, which affirmed a Boston Retirement Board (Boston Board) decision refusing to permit O’Donnell to buy-back 18 months of creditable service towards his State retirement pension. A hearing on cross motions for judgment on the pleadings was held on May 16, 2001. After considering the record and arguments of the plaintiff, who appeared pro se, and counsel for the Boston Board, O’Donnell’s motion will be ALLOWED and the Boston Board’s motion will be DENIED for the following reasons.
BACKGROUND
O’Donnell worked for the Massachusetts Department of Public Works[2] (DPW) between October 2, 1961 and February 10, 1967. On March 2, 1967, after resigning from his DPW position, O’Donnell received a refund of his retirement contributions from the State Board of Retirement (State Board). On August 31, 1988, O’Donnell returned to the public sector and began working for the Boston Redevelopment Authority (BRA). He then became a member of the Boston Retirement System.
In early 1989, O’Donnell submitted a request to the Boston Board to buy-back his prior service with the DPW between 1960 and 1967. On January 11, 1989, the Boston Board wrote to the State Board requesting the information it needed to determine how much time O’Donnell was eligible to buy-back towards his retirement. The letter informed the State Board that O’Donnell had previously worked for the DPW between 1960 and 1967.
In response, on March 16, 1989, the State Board wrote to the Boston Board stating that their records reflected service dates of March 15, 1963 to February 10, 1967. The letter also stated the amount returned to O’Donnell when he terminated his employment with the DPW in 1967. The State Board informed the Boston Board that, according to their records, O’Donnell was only entitled to buy-back for three years and ten months of prior service and that he was not entitled to any creditable service prior to March 15, 1963. That letter concluded with the following statement:
Please be advised that we have no record of contributing service prior to 3-15-63. In order for the Board to render a decision about liability for service prior to 3-15-63 we will need the following information supplied from Public Works:
Exact date of hire;
Salary earned from date of hire until date of membership;
Was employee full time for all service;
Why was retirement not deducted.
The above information can be obtained by contacting payroll at Public Works directly.
The Boston Board did not follow-up on the suggestion that it contact DPW for additional information. O’Donnell was informed by the Boston Board that he was entitled only to buy-back for 3 years and 10 months of prior service (3-15-63 to 2-11-67). Thereafter, in reliance on the information furnished by the Boston Board, O’Donnell bought back the 3 years and 10 months towards his retirement pension.
In fact, O’Donnell’s employment with the DPW began on October 2, 1961, some 18 months earlier than the State Board’s records showed. O’Donnell’s employment with DPW prior to March 15, 1963 was as provisional/emergency appointment. Since he was not a permanent employee prior to March 15, 1963, he was not eligible to join the State Retirement System. No pension contributions were paid, and consequently the State Board had no record of his employment. G.L.c. 32, §§1 and 2. However, when he became a permanent BRA employee in 1988, O’Donnell was entitled to buy-back for the 18-month period before his permanent employment with the DPW began. G.L.c. 32, §3(6)(c)-(d).
*498 Although the State Board did not have O’Donnell’s employment history prior to March 15, 1963 in its files, it could have obtained that information by simply writing or calling the DPW. Instead, it reported to the Boston Board that O’Donnell was only eligible to buyback for 3 years and 10 months and suggested that the Boston Board contact the DPW for information needed to determine O’Donnell’s eligibility to buy-back for employment prior to March 15, 1963. There is no evidence that the Boston Board ever contacted the DPW for information concerning his employment prior to March 15, 1963. Nor is there any evidence that O’Donnell ever received a copy of the State Board’s letter, and he denied receiving it. There is no dispute that he would have bought back that additional 18 months of service in 1989 if he had been informed of his right to do so.
The BRA fired O’Donnell on August 15, 1995. On August 7, 1995, O’Donnell applied to the Boston Board for retirement after being involuntarily terminated, certifying that his first date of employment with the State was on March 15, 1963. That date was based on the erroneous information O’Donnell received from the Boston Board in 1989 concerning his starting date in the retirement system.
O’Donnell subsequently filed a federal lawsuit against BRA alleging wrongful termination. That case was settled in February 1998. The settlement reinstated O’Donnell to active status from August 18, 1995 until August 18, 1997. Additionally, O’Donnell was deemed eligible to purchase his military service as creditable time towards his retirement.
On March 4, 1998, while sorting out the particulars of O’Donnell’s military credit, the Massachusetts Highway Department sent O’Donnell a copy of his employment history, showing that O’Donnell’s original date of employment was October 2, 1961. Noting that the March 15, 1963 date previously furnished by the Boston Board was in error, O’Donnell promptly requested the Boston Board to permit him to buy-back this recently discovered eighteen months of creditable service. On September 22, 1998, the Boston Board denied O’Donnell’s request. CRAB upheld this decision, and O’Donnell now seeks judicial review of that action.
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. See Coggin v. Massachusetts Parole Bd., 42 Mass.App.Ct. 584, 587 (1997) (citing Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). A court may set aside an administrative agency’s decision if it determines, based on the record before it:
that the substantial rights of any party may have been prejudiced because the agency is(a) In violation of constitutional provisions; or (b) In excess of statutory authority or jurisdiction of the agency; or (c) Based upon an error of law; or (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or (f) Unwarranted by facts found by the court on the records as submitted; or (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.
G.L.c. 30A, §14(7)(a)-(g). “Substantial evidence” is “that which a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). In reviewing the agency decision, the court must give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. See Flint v. Commissioner of Public Welfare, 412 Mass. 416, 420 (1992). The court, however, is not bound by an administrative decision that was based on an error of law. See Boston Police Superior Officers Federation v. Labor Relations Comm’n, 410 Mass. 890, 892 (1991).
General Laws Chapter 32, §3(6)(c)-(d) provides that any former member of a retirement system may reenter that system, upon returning to active employment with the Commonwealth, upon paying into the system the amount withdrawn upon leaving plus interest. The employee is also entitled to buy-back for employment that was hot permanent employment.
CRAB contends that once a member has retired and is receiving benefits, that member can no longer buyback credit accrued in prior service. In support of its position, CRAB cites G.L.c. 32, §3(5) which provides that a member must purchase previous credit “before the date any retirement allowance becomes effective for him.” CRAB asserts that this provision requires buy-back prior to retirement. Since O’Donnell did not request to buy-back the 1961-1963 time until after his retirement, CRAB contends that G.L.c. 32, §3(5) prohibits him from doing so now.
The issues presented by this appeal are whether CRAB’s decision is based on substantial evidence and whether its decision is correct as a matter of law.
O’Donnell appeared before the court at the hearing on the cross motions for judgment on the pleadings pro se. The thrust of his position may be summarized as follows. When he returned to public employment in 1988, after more than 20 years had elapsed, he asked the Boston Board to be allowed to buy-back for his prior employment with the DPW. He told the Boston Board the approximate dates of 1960 to 1967. The Boston Board then sent a letter to the State Board informing the State Board that O’Donnell had worked for the DPW between 1960 and 1967 and requested information that they needed to implement his buyback request. The State Board then notified the Boston Board by letter that O’Donnell was entitled only to buy-back for 3 year and 10 months of service that began on March 15, 1963. A copy of the letter was not sent to O’Donnell and he never received the letter but was simply told that he was only entitled to buy-back for 3 years and 10 months. He accepted this information as being accurate and bought-back the 3 years *499 and 10 months. Given his interest in maximizing his pension, he would have bought-back the additional 18 months if he had been given correct information by the Boston Board. It was not until many years later, after he had been fired by the BRA and had settled his lawsuit against the BRA, that he learned for the first time that his employment with the State began approximately 18 months prior to what he had been told by the Boston Board. Upon learning of this information, he immediately requested the opportunity to buy-back the remaining 18 months. Based on this background, he argues that he should not be penalized for the Boston Board’s error.
In affirming the decision of the Boston Board, CRAB adopted the findings of the Division of Administrative Law Appeals Administrative Magistrate. The following excerpt from the Administrative Magistrate’s decision goes to the heart of the decision:
The Appellant further contends because the “pension authority” (state board of retirement) did not provide accurate information concerning his original date of employment with the DPW or calculate the correct amount of creditable state service that he had accumulated, he should be able to purchase his service from October 2, 1961 to March 14, 1963. In support of this contention, the Appellant argued that he should not be penalized for relying on the erroneous calculations and negligence of the “pension authority” which resulted in his only purchasing creditable service for the period from March 15, 1963 to February 10, 1967. The Appellant also argued that upon realizing (Ex. 14) that his original date of employment with the DPW was October 2, 1961, the Appellant immediately notified the Respondent and requested to purchase the period of service. The Appellant, however, has not provided any evidence that the Respondent was negligent or that the Respondent has violated his rights under c. 32. More importantly, the Appellant has not pointed to any section in c. 32 where the relief requested can be given or any section that allows a member to purchase or be credited with state service after he has retired.
G.L.c. 32, §4(2)(a) mandated that a member must notify the Board about all prior service within one year of membership. This was not done. Nothing in the record shows that the Appellant notified or made the Respondent aware that he had worked for the DPW prior to 1963 until the Appellant’s letter of March 17, 1998. The Appellant should have disputed the “pension authority’s” calculation of his creditable service during his first year of membership with the Boston Retirement Board. The Appellant must assume some culpability for not making more of an effort to establish the actual amount creditable state service that he had accumulated prior to becoming a member in the Boston Retirement System. It is not the Respondent’s responsibility to establish the Appellant’s pre-membership state service credit but rather the Appellant’s responsibility. G.L.c. 32, §3(5) provides that any member of any system who had rendered services as an employee of any governmental unit other than that by which he is presently employed, or for any previous period during which the first governmental unit had no contributory retirement system . . . such member shall furnish the Board with such information as it shall require to determine the amount to be paid and the credit to be allowed under this subdivision.
(Emphasis supplied.) Administrative Record, at pp. 57, 58.
General Laws Chapter 32 undoubtedly presents one of the most complex areas of Massachusetts law. The statute, with annotations, runs 709 pages in length. Amendments to the statute are frequently enacted making the statute even more complex. Given this statutory maze, it is understandable that despite the conscientious efforts of the dedicated employees of the Boston Board and the State Board, occasional errors are made. In recognition of this reality the Legislature has included in Chapter 32 the following provision to address errors:
When an error exists in the records maintained by the system or an error is made in computing a benefit and, as a result, a member or beneficiary receives from the system more or less than the member or beneficiary would have been entitled to receive had the records been correct or had the error not been made, the records or error shall be corrected and as far as practicable, and future payments shall be adjusted so that the actuarial equivalent of the pension or benefit to which the member or beneficiary was correctly entitled shall be paid. If it is determined that a member has contributed an incorrect amount to the retirement system, the member shall be required to contribute an amount sufficient to correct . such error or the board shall pay an amount to the member to correct such error, as the case may be.
(Emphasis supplied.) G.L.c. 32, §20(5)(c)(2).
CRAB’s decision, however, makes no mention of any error by the Boston Board. Rather, the blame is placed on O’Donnell:
nothing in the record shows that the Appellant notified or made the Respondent aware that he had worked for the DPW prior to 1963 until the Appellant’s letter of March 17, 1998.
Administrative Record at p.58.
This finding of the magistrate is not supported by substantial evidence. Indeed, the undisputed evidence .is to the contrary. In fact, after his return to public employment in 1988, O’Donnell promptly took steps to buy-back his prior State time and informed the Boston Board that he had worked for the DPW between 1960 and 1967. In response to that information, the executive officer of the Boston Board wrote to the State *500 Board advising the State Board that O’Donnell claimed to have worked for the DPW between 1960 and 1967. In that letter, he requested information that the Boston Board needed to calculate O’Donnell’s buy-back entitlement. Administrative Record at p.19. The State Board then wrote back with the information it had in its records and informed the Boston Board of the additional information it would need from the payroll department at the DPW in order to determine the additional period of time to which O’Donnell was entitled. The letter directs the Boston Board to contact the “payroll at Department of Public Works directly.” Administrative Record at p. 16. It is clear from the record that there was simply no follow-up with the DPW.
In sum, the record establishes that in 1989, O’Donnell asked the Boston Board to buy-back his prior State service between 1960 and 1967. He was given incorrect information through no fault of his own. Later, after he retired and after the period for exercising his buy-back rights under the statute expired, he learned of the error and sought to remedy it. This is precisely the situation that G.L.c. 32, §20(5)(c)(2) was designed to remedy. Clearly an error was made when the Boston Board failed to follow-up on the State Board’s suggestion that it contact the DPW to obtain information concerning O’Donnell’s employment prior to March 15, 1963. It is unfair to place the blame on the shoulders of the employee who relies in good faith on the inaccurate information furnished by the agency which is in the best position to have access to the correct information.
In Boston Retirement Bd. v. McCormick, 345 Mass. 692 (1963), the Supreme Judicial Court had occasion to interpret G.L.c. 32, §20(5)(c)(2) in a case involving circumstances analogous to the case at bar. McCormick, a member of the retirement system, became injured while on the job and, after being terminated, sought return of her contributed funds. Id. at 693. Her local board then paid her the funds. In return she executed a release of all her rights as a member of the Boston Retirement System. She determined later, however, that she was entitled to greater benefits under the workers’ compensation provisions of the retirement system than simply a refund. Id. The Board denied her request to buy back into the system, citing a provision in the workers’ compensation portion of the retirement system statute indistinguishable from that in the instant case, that permitted buy-back “until a retirement allowance should become effective for her.” Id. at 694.
The Supreme Judicial Court held that the board’s returning the contributed funds to McCormick was an error (due to certain statutory prohibitions) and that §20(5)(c)(2) permitted the correction of such error, holding that the provision “recognizes that, in a complicated system of this type, errors are bound to occur.” Id. at 698 n.5. In so doing, the Supreme Judicial Court permitted McCormick to return her contribution to the Boston Retirement System allowing her to rejoin the system stating “we see nothing in the statute which prevents a member from receiving . . . benefits because of an honest error which can readily and fairly be corrected.” Id. at 698. The present case likewise involves “an honest error which can readily and fairly be corrected.” Id.; see also Dinatale v. Contributory Retirement Appeal Bd., 39 Mass.App.Ct. 401 (1995) (permitting a member to buy-back her creditable service after the date of her retirement and after she received benefits).
CRAB also contends that O’Donnell’s claim must fail because the retirement system’s statutory scheme imposes upon the member the obligation to bring to the board’s attention his dates of service. O’Donnell, therefore, by “sitting on his rights” for so long has “waived” them, and his claim is further barred by the doctrine of laches. These arguments lack merit. CRAB ignores the fact that O’Donnell’s initial inquiry to the Boston Board, and the Boston Board’s inquiry to the State Board, fulfilled this requirement. It was only when the Boston Board informed him that his creditable dates (1960-1967) were wrong that O’Donnell adopted the 1963 date as the true date. It was his reliance upon the Boston Board’s inaccurate information that led to his alleged “sitting on his rights.” Any argument of waiver, in the context of relied-upon inaccurate representations must fail. See Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., 767 F.Sup. 363 (D.Mass. 1991) (waiver implied by party’s conduct must be unequivocal and allow room for no other explanation). It cannot be said that O’Donnell waived his rights, after unsuccessfully attempting to assert them, by relying on the Boston Board’s incorrect information. The doctrine of laches does not apply, since the party asserting that doctrine cannot be the cause of the delay. Cf. School Committee of Brockton v. Massachusetts Comm’n Against Discrimination, 423 Mass. 7, 12-13 (1996).
Based upon the foregoing analysis, the court concludes that CRAB’S decision is not supported by substantial evidence because O’Donnell did in fact make a timely effort to buy-back all of his DPW time. The Court also concludes that CRAB’S failure to exercise its power to correct an honest error prejudicing O’Donnell constituted an error of law.
ORDER
For the reasons stated above, O’Donnell’s motion for judgment on the pleadings is ALLOWED and the Boston Retirement Board’s motion for judgment on the pleadings is DENIED.
Judgment shall enter annulling the decision of the Contributory Retirement Appeal Board in CR-98-763. This case is hereby REMANDED to the Contributory Retirement Appeal Board for further action consistent with this opinion.

 Now known as the Massachusetts Highway Department.